UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KELLS HETHERINGTON,                          CASE NO: 3:21-CV-671-
MCR-EMT
Plaintiff,

v.

LAUREL M. LEE, in her official
capacity as Florida Secretary of State, et al.,
Defendants.

_____/

Response In Opposition To Plaintiff's Motion For Preliminary Injunction
And
Response In Opposition To Plaintiff's Incorporated Motion To Consolidate A
Hearing On The Preliminary Injunction With Trial On The Merits
By Defendants Moody, Poitier, Stern, Smith, Allen, and Hayes


**The Preliminary Injunction**

Defendants, Moody, Poitier, Stern, Smith, Allen, and Hayes, by and through

undersigned counsel hereby respond in opposition to Plaintiff's motion for

preliminary injunction and state:

Plaintiff's motion for temporary injunction seeks to enjoin Defendants from

enforcing section 106.143(3), Fla. Stat., against any candidate for office.  This is

overbroad.  Further, although Plaintiff seeks to enjoin application of the entire

1

subsection, only the second half of subsection (3) (the non-partisan portion),

applies to this case.  Therefore, Plaintiff's motion seeking to enjoin enforcement of

all of subsection (3) is overbroad and inappropriate.  Moreover, there is no

enforcement role for Defendant Attorney General Moody, and thus no injunctive

relief is appropriate regarding her.

### Memorandum of Law

The subsection at issue states:

(3)  Any political advertisement of a candidate running for partisan office
shall express the name of the political party of which the candidate is
seeking nomination or is the nominee.   If the candidate for partisan office is
running as a candidate with no party affiliation, any political advertisement
of the candidate must state that the candidate has no party affiliation.   *A
political advertisement of a candidate running for nonpartisan office may
not state the candidate's political party affiliation.   This section does not
prohibit a political advertisement from stating the candidate's partisan-
related experience.   A candidate for nonpartisan office is prohibited from
campaigning based on party affiliation.*

Section 106.143(3), Fla. Stat. (emphasis added).  In this regard we also note that

the statute at issue contains no criminal penalties.  Subsection (11) states "[a]ny

person who willfully violates any provision of this section is subject to the civil

penalties prescribed in s. 106.265." See section 106.143(11), Fla. Stat.

Plaintiff seeks a preliminary injunction.  His purpose relates to his

campaigning for elections that will be final in November of 2022.  However, the

preliminary injunction he seeks is not limited to that purpose, but seeks to "enjoin

Defendants from enforcing Fla. Stat. § 106.143(3), barring candidates for

nonpartisan public office from expressing partisan affiliation." *See* DE #12, Plaintiff's Motion, at 1.  Thus, Plaintiff seeks to enjoin all enforcement of that entire subparagraph against all candidates.

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)(internal quotation and internal citations omitted).  Moreover, granting a preliminary injunction "is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion)." *Id.*

To warrant injunctive relief, the moving party must show that:

(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." S*ee McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998) (citing *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989)).

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

Moreover, in this Circuit,

[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' " as to each of the four prerequisites. *Id.* (internal citation omitted); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir.1975) (grant of preliminary injunction "is the exception rather than the rule," and plaintiff must clearly carry the burden of persuasion).

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

Because all four elements, above, must be met regarding the moving party's burden to show that a preliminary injunction is appropriate, the failure of any element mandates denial of the preliminary injunction.

I.      Non-Partisan Elections Are Constitutionally Proper

This statute is designed to protect the decision to have some Florida elections on a non-partisan basis. A state may require non-partisan elections.

> We are unpersuaded, however, by the party's contention that it has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as forums for political expression. See Burdick, 504 U.S., at 438, 112 S.Ct., at 2065–2066; id., at 445, 112 S.Ct., at 2069–2070 (KENNEDY, J., dissenting).

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351,362-63 (1997).

II.     Plaintiff Has Not Shown a Substantial Likelihood of Success on the Merits

Florida citizens, through their elected officials, have decided that many public offices should be elected on a non-partisan basis. This includes the election to the School Board that Plaintiff seeks in the election to be held approximately 17 months from now, in November 2022.

Plaintiff wants to tell voters that he is a "lifelong Republican." Plaintiff does not allege, nor could he, that the statute at issue prevents him from stating any fact regarding his history or his views on any issue. If his goal is to convey facts and

4

his background to the voters, the statute contains no impediment to doing so, and there is no need for a preliminary injunction.

However, Plaintiff wants to go a step farther than presenting facts or his opinions. He wants to present a party label to the voters, that of being a "lifelong Republican," which is surely a term that has little factual meaning in today's world. The meaning which it most engenders is that he is running "as" a Republican, and that he has the support of the Republican party. These are exactly the meanings that would eviscerate the Florida citizens' choice of making this a non-partisan election.

The statute clearly seeks to give meaning to the citizens' choice of having a non-partisan election. If a candidate may proclaim his or her political party affiliation, then the state's attempt on behalf of its citizens to keep certain elections on a non-partisan basis will be thwarted. The second half of subsection (3) of the statute gives meaning to the decision to have non-partisan elections. It prevents candidates from running "as" Republicans, or "as" Democrats.

These elections do not have partisan primary elections, so no candidate will be on the ballot with a party label after his or her name. A candidate running "as a lifelong Republican," as Plaintiff wishes to run, would be misleading and potentially confusing to voters who may expect to see the party label on the ballot next to Plaintiff's name, and then speculate regarding the reason for the absence of

the party label.  Such speculation could result in voter distrust of the state's

election process and raise doubts about the state's actions and about the fairness of

the election.

   The key concept in the statute is for Plaintiff to not run as a party candidate.

The statute does not limit in any way Plaintiff's expression of his position on any

issue.  He may present his views on any issue that he wishes.  He may state what

his views have been throughout his life or career.  He may also describe his

partisan-related experience.  He may state every partisan office or position he has

held.  Thus, he may describe, without limitation, any and all aspect of his beliefs,

positions, experiences and opinions.  However, he may not perform an "end-run"

on the statute and proclaim words that show that he is running "as" a Republican

(or other party) candidate.  The statute merely prevents Plaintiff from setting out

the "Republican" (or other party), label, which label will not be present on the

ballot.

   The burden that this statute imposes on Plaintiff is slight.  A slight burden is

subject to a determination of whether there is an "important regulatory interest."

*Timmons* at 358-59.

> Regulations imposing severe burdens on plaintiffs' rights must be narrowly
> tailored and advance a compelling state interest. Lesser burdens, however,
> trigger less exacting review, and a State's " 'important regulatory interests' "
> will usually be enough to justify " 'reasonable, nondiscriminatory
> restrictions.' " *Burdick*, *supra*, at 434, 112 S.Ct., at 2063 (quoting *Anderson*,
> *supra*, at 788, 103 S.Ct., at 1569–1570); *Norman, supra*, at 288–289, 112

S.Ct., at 704–706 (requiring "corresponding interest sufficiently weighty *359 to justify the limitation"). No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms. *Storer, supra,* at 730, 94 S.Ct., at 1279 ("[N]o litmus-paper test ... separat[es] those restrictions that are valid from those that are invidious.... The rule is not self-executing and is no substitute for the hard judgments that must be made").

*Timmons,* at 358-59.

The Supreme Court has upheld other limitations on voting.  Hawaii's prohibition on write-in voting did not unreasonably infringe upon its citizens' rights under the First and Fourteenth Amendments.  *Burdick v. Takushi*, 504 U.S. 428 (1992).

The state's important regulatory interest does not require a large degree of support.

Nor do we require elaborate, empirical verification of the weightiness of the State's asserted justifications. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 195–196, 107 S.Ct. 533, 537–538, 93 L.Ed.2d 499 (1986) ("Legislatures ... should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights").

*Timmons*, at 364.

The Supreme Court's description of the factors bearing on the political party should be equally applicable to Plaintiff, as a candidate.   Just as the Supreme Court described regarding a political party, Plaintiff has the ability, even following the statute broadly, to express his views on any and all topics, and receive support

from any quarter.  Where a state prohibited "fusion" candidates, preventing a

candidate from appearing on the ballot as a candidate of more than one party, a

political party

> retains great latitude in its ability to communicate ideas to voters and
> candidates through [his] participation in the campaign, and party members
> may campaign for, endorse, and vote for their preferred candidate …. *See
> Anderson*, 460 U.S., at 788, 103 S.Ct., at 1569–1570 ("[A]n election
> campaign is an effective platform for the expression of views on the issues
> of the day"); *Illinois Bd. of Elections v. Socialist Workers Party,* 440 U.S.
> 173, 186, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979) ("[A]n election
> campaign is a means of disseminating ideas").

*Timmons,* at 363.

Therefore, the state's interests are sufficient to sustain the minor burden of

Plaintiff, since Plaintiff may engage in any description he wishes regarding his

past, or his stance on issues – just not state that he is running as a Republican in

this non-partisan election.

Running as a Republican does not communicate any information except that

the Republican party supports the candidate, which is exactly what the citizens of

Florida have stated they wish to avoid.  Moreover, today, perhaps more so than at

any time in our history, labels of Democrat and Republican convey little or nothing

in the way of specific information regarding issues.  A candidate supporting a

balanced budget might be a Republican or might be a Democrat.  One can find

candidates and office-holders in either party who will support or reject any issue

imaginable.  In fact the perception of voters that some Republicans are Republican

in name only has even created a new term of "RINO", being Republican In Name Only, thus demonstrating that the party label does not describe the views of the individual on the issues.

Plaintiff's desire to advertise himself as a "lifelong Republican" is tantamount to saying he is and always will be a Republican.  Thus, the clear message is that he is running as a Republican, not as a non-partisan candidate. This is what the law is designed to prevent.  Allowing candidates to attach the label of Republican or Democrat would make a mockery of the decision of Florida citizens to make these elections non-partisan.

If the Court disagrees, and thinks a preliminary injunction is warranted, the Court should nevertheless construe the statute in such a way as to preserve its existence.  Although the FEC believes that Plaintiff proclaiming himself to be a "lifelong Republican," violates the statute, this Court could determine that a proper construction of the statute is that "lifelong Republican" is a form of stating the candidate's partisan-related experience, and thus is not a violation.

III.    Plaintiff Will Not Suffer Irreparable Injury

Plaintiff entered this election campaign knowing that it was a nonpartisan election.  He knew that there could be no partisan label next to his name on the

ballot.  He therefore knew that the will of Florida's citizens was that the election would be determined by factors other than party affiliation.

Plaintiff is free to advertise his partisan related experience.  He may describe every position he has held and all of his duties and responsibilities.  He may explain his views, currently and in the past, on every issue he wishes to present to the voters.  Therefore, he may communicate any piece of information that he wants voters to know through his desired phrase of "lifelong Republican," but using something other than that potentially misleading and confusing label that suggests that he is the Republican party's nominee.

With the only limitation being that Plaintiff may not use a party label, stating that he is a "lifelong Republican," which label would have the potential to mislead and confuse voters, the injury to Plaintiff is minor, if any.


IV.   The Threatened Injury to the Movant Does Not Outweigh Whatever Damage the Proposed Injunction May Cause the Opposing Party

As with the lack of irreparable injury, the minor and appropriate restriction of Plaintiff's statements attaching the -party label to himself does not outweigh the disruption of the FEC by stopping its enforcement of this subsection of the statute. Therefore, a preliminary injunction is unnecessary, and unwarranted.

A preliminary injunction would disrupt the will of the Florida citizens who enacted the statute through their duly elected legislators.

## V.     If Issued, The Preliminary Injunction Would Be Adverse To The Public Interest

As described above, the citizens of Florida have determined that the public office that Plaintiff seeks should be elected on a non-partisan basis.  Non-partisan elections eliminate some of the shrill partisan politics that can ensue in partisan races, and focuses candidates on issues, rather than the fact of whether a political party supports the candidate. Thus, the citizens of Florida, through their legislators, have already spoken, and said with a clear voice that a non-partisan election is in the public interest. Additionally, the citizens have decided that candidates should not advertise their party affiliation.

A preliminary injunction would cancel those desires of the Florida citizens.

## VI.    The FEC Has Not Referred Any Complaint To The State Attorney

The relevant statute for action by the State Attorney is section 106.25, Fla. Stat.  In relevant part it states

> (6) It is the duty of a state attorney *receiving a complaint referred by the commission* to investigate the complaint promptly and thoroughly; to undertake such criminal or civil actions *as are justified by law*; and to report to the commission the results of such investigation, the action taken, and the

disposition thereof. The failure or refusal of a state attorney to prosecute or to initiate action upon a complaint or a referral by the commission shall not bar further action by the commission under this chapter.

Section 106.25(6), Fla. Stat. (emphasis added).  Since the State Attorney may act only when the FEC refers a complaint, and since the FEC has not referred a complaint, there is no set of facts warranting a preliminary injunction, and no reason to believe that this will be appropriate in the future.  Notably, the statute includes the phrase that the State Attorney will take actions "as are justified by law…"  There is no avenue that appears to be justified by law for a State Attorney to enforce a civil statute, and Plaintiff has not proposed any connection of the State Attorney, or, the Attorney General.

## VII.   Attorney General Moody Is Not A Proper Defendant Because She Has No Role In Enforcement Of the Statute

Since there is no apparent basis to enjoin State Attorney Madden, *a fortiori* there is no basis to enjoin Attorney General Moody, whose inclusion is justified by Plaintiff entirely due to Attorney General Moody's role in supervising State Attorneys.  In fact, as she will present in a motion to dismiss, she is not a proper defendant, is immune even if she is a proper defendant, and should be dismissed from this action with prejudice.

Attorney General Moody has no direct role in enforcing this statute. Plaintiff does not allege otherwise.

Plaintiff asserts that the Attorney General is appropriately sued due to her indirect role from her statutory duty to direct and oversee state attorneys under section 16.08, Fla. Stat.  This paints with too broad a brush.

The Attorney General's oversight does not extend to day-to-day prosecutions.  Although cases are not uniform, the better view is that Florida's Attorney General is not the prosecuting officer of all trial courts in Florida. In a dissimilar case, since it dealt with a criminal violation, the district court explained

> Here, the challenged law is a criminal statute. Under Florida's Constitution, each "state attorney shall be the prosecuting officer of all trial courts in [her respective] circuit." Fla. Const. art. V, § 17. As another district court succinctly put it, "[t]he State Attorney enforces criminal law in Florida, not the Florida Attorney General." *Freiberg v. Francois*, No. 4:05CV177-RH/WCS, 2006 WL 2362046, at *6 (N.D. Fla. Aug. 15, 2006). And Defendants are correct that this rule's exceptions — that the Attorney General may prosecute "violations of municipal ordinances" and, through the Statewide Prosecutor, violations of certain enumerated criminal laws that occur in two or more judicial circuits — do not apply here. (Doc. # 27 at 8-9)(citing Fla. Const. art. V, § 17 and art. IV, § 4(b)).

*Roberts v. Bondi*, No. 8:18-CV-1062-T-33TGW, 2018 WL 3997979, at *2 (M.D. Fla. Aug. 21, 2018).  *Cf. Ayala v. Scott*, 224 So. 3d 755, 757 (Fla. 2017) ("article V, section 17, of the Florida Constitution makes [the State Attorney] 'the prosecuting officer of all trial courts in [the Ninth] [C]ircuit.'" )

This explanation should apply with even greater force regarding section 106.143(3), Fla. Stat., because this section deals with only civil penalties.  The State Attorney appears to have no role in enforcing election laws with civil penalties, and even if the State Attorney had such a role, the Attorney General would have no role in mandating or prohibiting such enforcement.

VIII.  Preliminary Injunctive Relief Against The Florida Attorney General Is Barred By Sovereign Immunity, The Eleventh Amendment, And Plaintiff's Lack Of Article III Standing To Seek Such Relief

The States' sovereign immunity is deeply rooted in our nation's federal structure.  *See Alden v. Maine*, 527 U.S. 706, 712-27 (1999).  While that immunity is reflected in the Eleventh Amendment, the phrase "Eleventh Amendment immunity" is "somewhat of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."  *Id.* at 713.  Rather, sovereign immunity is "'a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today[,] except as altered by the plan of the Convention or certain constitutional amendments.'"  *N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (quoting *Alden v. Maine*, 527 U.S. at 731).  "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."  *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535

U.S. 743, 760 (2002).  State sovereign immunity extends to state agencies, as

"'arm[s] of the State,' which includes agents and instrumentalities of the State…."

*Zabriskie v. Court Admin*., 172 Fed. Appx. 906, 907-08 (11th Cir. 2006) (citation

omitted); see also *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir 1990) ("[T]he

Eleventh Amendment extends to state agencies and other arms of the state").  The

State of Florida has not waived its sovereign immunity.  It has not consented to suit

in the federal courts.  See Fla. Stat. § 768.28(18) (2011); *Schopler v. Bliss*, 903

F.2d at 1379.

An exception to States' immunity from suit in federal court arises under

the doctrine announced in *Ex parte Young*, 209 U.S. 123 (1908), whereby "a suit

challenging the constitutionality of a state official's action is not one against the

State."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).

Indeed, *Young* does not reach state officials who lack a "special relation to the

particular statute" and "[are] not expressly directed to see to its enforcement."  *Ex*

*parte Young*, 209 U.S. at 157.  It is well settled that, "[u]nless the state officer has

some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex*

*parte Young*[, 209 U.S. 123 (1908),] cannot operate."  *Osterback v. Scott*, 782 F.

App'x 856, 859 (11th Cir. 2019) (quoting *Summit Med. Assocs., P.C.  v. Pryor*,

180 F.3d 1326, 1341 (11th Cir. 1999)).  "Where the named defendant lacks any

responsibility to enforce the statute at issue, 'the state is, in fact, the real party in

interest,' and the suit remains prohibited by the Eleventh Amendment." Id. (quoting *Summit Med. Assocs.*, 180 F.3d at 1341).

Here, the Attorney General has no enforcement authority with respect to the challenged statutory provision. Her general authority to appear on the State's behalf to defend legislation does not make her a proper party defendant or support an action against her. *Cf. Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003); *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276-77 (N.D. Fla. 2000). As a matter of law, the "[g]eneral duty to defend the constitutionality of state statutes is insufficient to make government officials parties to litigation challenging the law." *Children's Health Is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996). Accordingly, no injunctive relief can be entered against the Attorney General.[1]

---

[1] The challenged provision is not a criminal law. But even if it were, the Attorney General would nonetheless be an improper party. In Florida, it is the State Attorneys who are charged with criminal enforcement of statutes, Art. V, § 17, Fla. Const.; Fla. Stat. § 27.02, and not the Attorney General (with narrow but irrelevant exceptions, mainly pertaining to antitrust enforcement). While Florida has established within the Office of the Attorney General the position of Statewide Prosecutor, appointed by the Attorney General under prescribed conditions, the Statewide Prosecutor has concurrent jurisdiction with State Attorneys for criminal violations committed in or affecting more than one judicial circuit. Art. IV, § 4(b), Fla. Const. But the Statewide Prosecutor has no role unless a violation implicates more than one circuit. See generally *Winter v. State*, 781 So. 2d 1111 (Fla. 1st DCA 2001), disapproved on other grounds, *Carbajal v. State*, 75 So. 3d 258 (Fla. 2011). Regardless, the Attorney General would have no such role.

Moreover, because the Attorney General has not been and will not be the enforcer of the challenged statutory provision, Plaintiff lacks Article III standing to seek relief against her, including a preliminary injunction.  Plaintiff cannot establish either traceability, because no causal connection exists between the Attorney General and any actual or potential injuries from enforcement of the statute, or redressability, because a judgment against the Attorney General could not furnish meaningful relief for Plaintiff.  See *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1207-08 (11th Cir. 2020) (dismissing Secretary of State from suit challenging placement of candidates' names on ballots even though she is "chief election officer of the state"); *Lewis v. Governor of Alabama*, 94 F.3d 1287 (11th Cir. 2019) (*en banc*) (injury of lower wages from challenged law not traceable to Alabama Attorney General).

Therefore, even if the Court decides to grant Plaintiff's motion, no injunction should issue regarding Attorney General Moody.

## Consolidation Of The Merits Into The Preliminary Injunction Hearing

The above defendants oppose a consolidation of the preliminary injunction hearing and of trial on the merits.

Attorney General Moody will file a motion to dismiss her from this case, as an improper party, immunity, and other grounds.  It is preferable to ask the Court

to permit this motion to be resolved prior to having Attorney General Moody

appear as a party at a trial on the merits.

The FEC Commissioners similarly oppose consolidation.  They too plan to

file a motion to dismiss.  The result of the motion to dismiss could narrow or

clarify the issues to be decided at a trial on the merits, and Defendants would be

prejudiced by going forward prior to this determination.  "Generally speaking, such

a consolidation is proper where the parties are not prejudiced by lack of notice."

*Cooper v. Wisdom*, 440 F. Supp. 1027, 1029 (S.D. Fla. 1977) citing *Eli Lilly & Co.*

*v. Generix Drug Sales, Inc.*, 460 F.2d 1096 (5th Cir. 1972).  Additionally,

Defendants will want to seek some amount of discovery from Plaintiff.  Waiting

for this discovery to be completed might not be desirable regarding the preliminary

injunction hearing.  "Another factor to consider is whether the factual issues raised

by the complaint and the motion for a preliminary injunction were "susceptible of

complete examination upon a trial on short notice and were, in fact, examined

thoroughly. . . . "  *Cooper v. Wisdom*, 440 F. Supp. 1027, 1029 (S.D. Fla. 1977).

Cf, *Nationwide Amusements, Inc. v. Nattin*, 452 F.2d 651, 652 (5th Cir. 1971)

(party should have the opportunity to fully develop its case on the constitutional

issues).

Therefore, Defendants Moody, Poitier, Stern, Smith, Allen, and Hayes

oppose Plaintiff's request to consolidate.

WHEREFORE, for all of the foregoing reasons, the motion for a preliminary injunction should be denied, and the Court should not consolidate the preliminary injunction hearing with the trial on the merits.

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Glen A. Bassett*
Glen A. Bassett (FBN 615676)
Special Counsel
Complex Litigation
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
850-414-3300
Glen.Bassett@myfloridalegal.com
ComplexLitigation.eservice@myfloridalegal.com
For Defendants Moody, Poitier, Stern, Smith, Allen, and Hayes

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

I HEREBY CERTIFY that the foregoing response contains 4,505 words, and is thus within the limitation of the Local Rules of this Court.

*/s/ Glen A. Bassett*
Glen A. Bassett
Attorney

19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of June 2021, I electronically filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will serve all attorneys of record.

*/s/ Glen A. Bassett*
Glen A. Bassett
Attorney
