UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KELLS HETHERINGTON,    CASE NO: 3:21-CV-671-MCR-EMT
Plaintiff,

v.

LAUREL M. LEE, in her official
capacity as Florida Secretary of State, et al.,
Defendants.
_____/

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS POITIER, STERN, SMITH, ALLEN, AND HAYES

Defendants, Joni Alexis Poitier, Barbra Stern, Kymberlee Curry Smith, Jason Todd Allen, and J. Martin Hayes (hereinafter, the "FEC Defendants"), by and through undersigned counsel, and pursuant to this Court's Order of July 28, 2021 (DE #52), submit this supplemental memorandum in support of FEC Defendants' Motion to Dismiss, filed June 21, 2021 (DE #39) for the limited purpose of addressing "the line of cases stemming from the Supreme Court's statement in *Michigan v. DeFillippo* that '[t]he enactment of a law forecloses speculation by enforcement officials concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.'" (Order at 2 (citing 443 U.S. 31, 38 (1979).)

1

## OVERVIEW

**Question Presented:** Were the FEC Defendants entitled to assume the challenged provisions of § 106.143(3) were free of constitutional flaws or were the challenged provisions of § 106.143(3) "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *See DeFillippo*, 443 U.S. at 38.

**Answer:** Yes. Under *DeFillippo* and its progeny, the challenged provision of § 106.143(3) is not "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." Therefore, the FEC Defendants were entitled to assume the challenged provisions were constitutional, and are entitled to the protection of qualified immunity for claims against them in their personal capacities.

## MEMORANDUM OF LAW

*Michigan v. DeFillippo* stands for the proposition that generally "[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality." 443 U.S. at 38. As other courts have interpreted *DeFillippo*, this means that officers who are enforcing a law are shielded from personal liability through the doctrine of qualified immunity. *Lederman v. U.S.*, 291 F.3d 36, 46-47 (D.C. Cir. 2002); *Grossman v. Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994); *Muniz v. City of San Antonio*, 476 F. Supp. 3d 545, 565 n.24 (W.D. Tex. 2020).

Here, there was a law enacted, which Defendants were enforcing in accordance with their duty. Thus, the general rule is that they are entitled to qualified immunity for claims against them in their personal capacities.

However, there is a narrow exception to this general principle, where officers enforcing a law can be liable. This exception only applies if "a law [is] so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *DeFillippo*, 443 U.S. at 38. Here, section 106.143(3), Florida Statutes,[1] is not "grossly and flagrantly" unconstitutional because: (1) the statute has remained in force without challenge since 2012; (2) the restriction on speech is minimal, permitting the speaker to enunciate any position or message except for the shorthand use of the amorphous term "republican"; (3) the Florida Attorney General had previously opined that a statute making an election nonpartisan would also have to prohibit candidates for such office from campaigning or qualifying for such office based on party affiliation (*see* AGO 79-106); and (4) there have been no challenges to identical statutes that would have required the FEC Defendants to set aside their duty and refuse to enforce section 106.143(3).

Further, the very few cases finding any presumptively valid law to be "grossly and flagrantly unconstitutional" are clearly distinguishable and inapplicable to the case at bar.

---

[1] This section provides, in pertinent part: "A political advertisement of a candidate running for nonpartisan office may not state the candidate's political party affiliation. This section does not prohibit a political advertisement from stating the candidate's partisan-related experience. A candidate for nonpartisan office is prohibited from campaigning based on party affiliation." Fla. Stat. § 106.143(3).

**A. Section 106.143(3) Is Not Grossly and Flagrantly Unconstitutional.**

The "possible exception" expressed in *DeFillippo* "has been employed sparingly." *Harrison v. Deane*, 426 F. Appx. 175, 179 (4th Cir. 2011) (citing *U.S. v. Cardenas–Alatorre*, 485 F.3d 1111, 1117 n. 15 (10th Cir. 2007) ("Only in the rarest of instances, as reflected in the standard set forth in *DeFillippo*, is an officer expected to question the will of the majority embodied in a duly, and democratically, enacted law")). "[T]he possible exception . . . does not apply merely because a person alleges a violation of his First Amendment rights[,]" *Harrison*, 426 F. Appx. at 179, and laws challenged on First Amendment grounds are frequently held not to fall into the narrow exception.[2] For the reasons set forth below, the narrow exception does not apply here, and thus, the FEC Defendants were entitled to rely on the presumptive validity of Section 106.143(3).

---

[2] *See, e.g. Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005) (rejecting argument that statute prohibiting disclosure of nonpublic information obtained as participant in internal investigation of law enforcement officers was "grossly and flagrantly unconstitutional"); *Harrison*, 426 F. Appx. at 181 (rejecting argument that statute prohibiting cursing, swearing, and intoxication in public was "grossly and flagrantly unconstitutional" where the statute had never previously been declared unconstitutional); *Lederman*, 291 F.3d at 48 (rejecting argument that regulation prohibiting distribution of leaflets in "no-demonstration zone" in front of the U.S. Senate was "grossly and flagrantly unconstitutional"); *Cantrell v. Rumman*, No. 04 C 3041, 2005 WL 1126551, at *15 (N.D. Ill. Feb. 9, 2005) (rejecting argument that administrative regulation requiring prior written approval to distribute leaflets in front of a certain government building was "grossly and flagrantly unconstitutional").

### 1. First Amendment Analysis Requires Complex Balancing Test Not Appropriate for Government Officials.

Whether a certain law impacting First Amendment rights of free speech is constitutional depends on multiple factors and the balancing of asserted state interest. "Denying qualified immunity to [the FEC Defendants] and subjecting them to civil liability under the facts of this case would necessarily imply that [the FEC Defendants], as government officials, should have conducted the type of interest balancing that legislators are presumed to conduct when enacting legislation and that jurists necessarily conduct when reviewing legislation. This would demand too much from our government officials." *Conn. ex rel Blumenthal v. Crotty*, 346 F.3d 84, 104 (2d Cir. 2003). Even where a challenged law or regulation impacts what is clearly a fundamental right, that does not preclude finding that the law is not "grossly or flagrantly unconstitutional" for purposes of "qualified immunity analysis . . . [because] rights may be fundamental but nonetheless legitimately curbed by appropriately tailored and sufficiently justified legislation." *Id.* "[A] reasonable officer cannot be expected to perform that analysis prior to enforcing a statute on the books in the execution of his official duties." *Id.*; *see also Cantrell*, No. 04-C-3041 2005 WL 1126551 at *15 (noting that "the difficulty in making our determination that the challenged regulations violate the First Amendment given the competing and compelling interests of the government" weighed against finding that the statute was "grossly and flagrantly unconstitutional"). Given the nuance and complexity of

5

the requisite First Amendment analysis, the law cannot be said to be so "grossly and flagrantly unconstitutional" that the FEC Defendants would be bound to see constitutional flaws in the law.

### 2. Clear Attempt at Tailoring.

Courts have refused to find that a challenged law is "grossly and flagrantly unconstitutional" where there is "some attempt at tailoring," even when such attempt "cannot begin to satisfy the narrow tailoring requirement" necessary to pass constitutional muster. *Lederman*, 291 F.3d at 41 (holding that law banning distribution of leaflets in a "no-demonstration zone" on the steps of the U.S. Senate was not grossly and flagrantly unconditional where there was some attempt at tailoring the law, even though the Court found "the ban's sheer breadth astonishing"); *see also Cooper*, 403 F.3d at 1217 n.5 (noting that statute was "appropriately limited to participants[,]" "applicable only to information gleaned pursuant to the investigation[,]" "and lasts for a presumptively definite duration" even though statute failed constitutional muster for lack of a sufficiently compelling government interest).

Here, section 106.143(3) expressly provides that it "does not prohibit a political advertisement from stating the candidate's partisan-related experience." Fla. Stat. § 106.143(3). This attempt at tailoring clearly "keeps it from being 'so grossly and flagrantly unconstitutional' that the [FEC Defendants] should have

recognized its flaws." *See Lederman*, 291 F.3d at 41 (citing *DeFillippo*, 443 U.S. at 39) (internal citation omitted).

### 3. Plaintiff Cites No Case Finding Section 106.143(3) Unconstitutional and Plaintiff's Decision to Settle Prior Dispute Weighs Heavily Against Finding the Statute Falls Within the *DeFillippo* Exception.

"[N]otwithstanding potential or even foreseeable constitutional challenge, [u]ntil judges say otherwise, state officers . . . have the power to carry forward the directives of the state legislature, and [] absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Crotty*, 346 F.3d at 102 (internal citations and quotation marks omitted). For example, in *Cantrell*, the Northern District of Illinois ruled that the plaintiff's failure to cite any cases challenging the Leafletting and Exhibit Regulations at issue was relevant to the court's conclusion that qualified immunity applied and that the law was not "grossly and flagrantly unconstitutional." 2005 WL 1126551, at *15 (holding that qualified immunity applied to those enforcing administrative regulation requiring prior written approval to distribute leaflets in front of a certain government building).

Here, Plaintiff has cited no prior challenges to section 106.143(3), which has existed in its current form since 2012, that would support a finding that the law was "grossly and flagrantly unconstitutional." Moreover, Plaintiff's decision **not to prosecute** and to instead settle his prior dispute with the FEC regarding this very

7

statute weighs heavily against any finding that the FEC Defendants should have known that the law was unconstitutional. *See Cooper*, 403 F.3d at 1220 (citing the trial court's previous disposition of plaintiff's constitutional challenge to prior version of statute as support for finding that "reasonable public officials could have differed as to the constitutionality of the statute").

### 4. Statutory Definition of "Nonpartisan Office" Precludes Finding That Section 106.143(3) Is "Grossly and Flagrantly Unconstitutional."

Pursuant to section 97.021, Florida Statutes, "'nonpartisan office' means an office for which a candidate is prohibited from campaigning or qualifying for election or retention based on party affiliation." Fla. Stat. § 97.021. This definition is in complete harmony with the requirements of section 106.143(3) and precludes any finding that section 106.143(3) is "grossly and flagrantly unconstitutional," especially given that Plaintiff has not challenged the definition. *See Lederman*, 291 F.3d at 47 (holding that "[a]lthough the longstanding policy of prohibiting demonstrations around the Capitol cannot 'bootstrap' the current ban 'into validity' we do think that policy could have misled a reasonable police officer as to the ban's constitutionality.") (internal citation omitted).  Further, the Florida Attorney General responded to a request regarding creation of a nonpartisan election and opined, in part, that such a statewide statute would be lawful, and that such a statute should also

prohibit candidates from campaigning based on party affiliation. In pertinent part, the Attorney General Opinion states:

> While the Legislature has the power to make the elections of noncharter county officers nonpartisan, s. 11(a)(1), Art. III, State Const., requires that such a provision must be by a general law of uniform operation throughout the state. Such a statute would, in my opinion, have to declare the county office in question to be nonpartisan and prohibit candidates for such office from campaigning or qualifying for such county office based on party affiliation.

Opinion of the Florida Attorney General, AGO 79-106. That is what section 106.143(3), Florida Statutes, did.

### B. *Leonard v. Robinson* and *Dumiak v. Village of Downers Grove* Are Inapplicable.

*Leonard v. Robinson* is one of the very few cases finding that an enforcement officer may not be entitled to qualified immunity for enforcing a presumptively valid law. 477 F.3d 347 (6th Cir. 2006). The plaintiff in *Leonard* was arrested for saying the phrase "God damn" during a township board meeting.[3] *Id*. at 351.

However, *Leonard* is distinguishable in several key respects. First, the court explicitly limited its ruling to the context of a public assembly, "hold[ing] that no

---

[3] The arresting officer relied on state criminal statutes prohibiting "indecent or obscene conduct in a public place"; "use [of] any indecent, immoral, obscene, vulgar or insulting language in the presence or hearing of any woman or child"; "profanely curs[ing] or damn[ing] or swear[ing] by the name of God, Jesus Christ or the Holy Ghost"; and disorderly conduct "at any . . . public meeting where citizens are peaceably and lawfully assembled" to support his claim for qualified immunity. *Id*. at 356.

reasonable officer would find that probable cause exists to arrest a recognized speaker at a chaired public assembly based solely on the content of his speech" who had not been determined to be out of order by the individual chairing the assembly. *Id.* at 351. Further, *Leonard* involved criminal statutes, which the court determined to be unconstitutionally vague "as applied in the context of a democratic assembly[,]" based largely on an intervening ruling by a state appellate court. *Id.* at 356. The court also found that one of the statutes, regulating conduct, did not apply to the plaintiff's speech, and thus there was no probable cause to arrest the plaintiff for violation of that statute. *Id.* Moreover, procedurally, the case involved an appeal of the trial court's order granting summary judgment in favor of the arresting officer on his qualified immunity defense. On appeal, the Sixth Circuit held that, *when viewed in the light most favorable to the non-movant for summary judgment* (the plaintiff), the evidence in the record contained disputed issues of fact[4] which precluded entry of summary judgment on the arresting officer's qualified immunity defense. *Id.* at 355-56 ("Where the reasonableness of an officer's actions hinge on disputed issues of fact, the jury becomes the final arbiter of . . . immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.") (citation and internal quotation marks omitted). *Leonard* is

---

[4] Among other things, the court cited a factual dispute concerning the arresting officer's motive for the arrest. *Id.* at 353.

inapplicable to the facts of this case, which occur outside the context of a recognized speaker at a public assembly, where there is no dispute as to the applicability of the challenged statute, and no factual dispute regarding motive or any other relevant issue.

*Dumiak v. Village of Downers Grove* is also distinguishable. 475 F. Supp. 3d 851 (N.D. Ill. 2020). That case involved a village "ordinance making it illegal to solicit money without a permit" and a similar state criminal statute providing that "[n]o person shall stand on a highway for the purpose of soliciting contributions from the occupant of any vehicle . . . ." *Id.* at 853. In denying the Village's motion to dismiss, the court held that qualified immunity did not apply because existing precedent from the U.S. Supreme Court and the Seventh Circuit clearly established that "a speech restriction targeting panhandling discriminates based on content and survives constitutional muster only when supported by a compelling justification" and that the ordinance and statute at issue clearly fell short. *Id.* at 854-55 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015)). The court further held that the state statute impermissibly discriminated based on the identity of the speaker by permitting exemptions for registered charitable organizations, when "First Amendment doctrine 'suggests little reason to distinguish between beggars and charities in terms of the First Amendment protection for their speech.'" *Id.* at 856. The court rested its decision on the fact that

11

the controlling precedent was all "on the books" at the time of the officers' conduct. *Id.* By contrast, the statute at issue in this case is not a criminal statute, does not discriminate based on the speaker, and there is no on-point precedent establishing that the statute is unconstitutional.

## **CONCLUSION**

For all the reasons stated above, and those stated in the FEC Defendant's Motion to Dismiss, all claims against the FEC Defendants in their individual capacities should be dismissed.

> ASHLEY MOODY
> ATTORNEY GENERAL
> */s/ Glen A. Bassett*
> Glen A. Bassett (FBN 615676)
> Special Counsel
> Complex Litigation
> Office of the Attorney General
> PL-01 The Capitol
> Tallahassee, FL 32399-1050
> 850-414-3300
> Glen.Bassett@myfloridalegal.com
> ComplexLitigation.eservice@myfloridalegal.com
> For Defendants Poitier, Stern, Smith, Allen, and Hayes

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that the foregoing response contains 2690 words, and is thus within the limitation of the Local Rules of this Court.

>  */s/ Glen A. Bassett*
>  Glen A. Bassett
>  Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of August 2021, I electronically filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will serve all attorneys of record.

>  */s/ Glen A. Bassett*
>  Glen A. Bassett
>  Attorney