# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

KELLS HETHERINGTON,
    *Plaintiff*,

        v.

GINGER BOWDEN MADDEN, in her
official capacity as State Attorney,
et al.,
        *Defendants*.

Case No.
3:21-cv-671-MCR-EMT

# PLAINTIFF KELLS HETHERINGTON'S OPPOSITION TO FEC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

Table of Authorities ...................................................................................iv

Introduction .............................................................................................1

Statement of Facts ...................................................................................3

Legal Standard .........................................................................................7

Argument .................................................................................................8

  I.  Florida Has Given No Evidence That Its Election Scheme Creates Constitutionally Proper Nonpartisan Elections ...............................8

  II. The FEC Defendants Incorrectly Assert That This Court Cannot Grant Relief .......................................................................................12

  III.  The FEC Defendants Have Failed to Show that § 106.143(3) Survives Constitutional Scrutiny ....................................................16

    A. Section 106.143(3) exacts a First Amendment harm subject to strict scrutiny ...................................................................................16

    B. The State has not demonstrated a compelling interest ...............22

      1. The FEC Defendants fail to raise or demonstrate the interest in preventing corruption or the appearance of corruption............22

      2. Invoking an interest in preserving nonpartisan offices fails to support the speech restriction....................................................22

      3. Attempting to minimize the burden on Mr. Hetherington's speech does not demonstrate a compelling governmental interest .......................................................................................26

    C. The FEC Defendants have failed to show that the speech restriction is narrowly tailored .....................................................29

Conclusion................................................................................................32

TABLE OF AUTHORITIES

**Cases**

*Brown v. Entm't Merchs. Ass'n,*
   564 U.S. 786 (2011) ......................................................... 10, 30

*Brown v. Hartlage,*
   456 U.S. 45 (1982) ................................................................. 18

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ................................................................... 17

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ......................................................... 20, 21

*Carey v. Wolnitzek,*
   614 F.3d 189 (6th Cir. 2010) ................................... 28, 29, 31

*Citizens United v. Fed. Election Comm'n,*
   558 U.S. 310 (2010) ....................................... 16, 17, 18, 29

*Cohen v. Cal.,*
   403 U.S. 15 (1971) ......................................................... 27, 28

*Dana's R.R. Supply v. Att'y Gen.,*
   807 F.3d 1235 (11th Cir. 2015) ........................................... 28

*Fed. Election Comm'n v. Wis. Right to Life,*
   551 U.S. 449 (2007) .............................................................. 17

*Fitzpatrick v. City of Atlanta,*
   2 F.3d 1112 (11th Cir. 1993) ................................................. 8

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp.,*
   515 U.S. 557 (1995) .............................................................. 27

*IMDb.com Inc. v. Becerra*,
 962 F.3d 1111 (9th Cir. 2020) ............................................................. 10

*In re Code of Jud. Conduct (Canons 1, 2, and 7(1)(B)*,
 603 So. 2d 494 (Fla. 1992) ................................................................... 23

*In re Springfield*,
 818 F.2d 565 (7th Cir. 1987) ................................................................ 10

*Landolfi v. City of Melbourne*,
 515 F. App'x 832 (11th Cir. 2013) ......................................................... 8

*McCullen v. Coakley*,
 573 U.S. 464 (2014) .............................................................................. 29

*McCutcheon v. Fed. Election Comm'n*,
 572 U.S. 185 (2014) ....................................................................... passim

*Melvin v. Fed. Express Corp.*,
 814 F. App'x 506 (11th Cir. 2020) ......................................................... 8

*Nat'l Inst. of Fam. & Life Advocates v. Becerra*,
 138 S. Ct. 2361 (2018) ......................................................................... 31

*Nixon v. Shrink Mo. Gov't Pac*,
 528 U.S. 377 (2000) .......................................................................... 9, 31

*Ohio Council 8 Am. Fed'n of State v. Husted*,
 814 F.3d 329 (6th Cir. 2016) .......................................................... 11, 26

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
 475 U.S. 1 (1986) ................................................................................. 27

*Reed v. Town of Gilbert*,
 576 U.S. 155 (2015) ....................................................... 18, 19, 20, 29

*Renne v. Geary*,
 501 U.S. 312 (1991) ............................................................................. 15

v

*Republican Party v. White,*
　416 F.3d 738 (8th Cir. 2005) ..................................................24, 25, 30

*Republican Party v. White,*
　536 U.S. 765 (2002) ........................................................................1, 19

*Siefert v. Alexander,*
　608 F.3d 974 (7th Cir. 2010) ..................................................19, 25, 31

*Timmons v. Twin Cities Area New Party,*
　520 U.S. 351 (1997) .............................................................8, 12, 20, 21

*United States v. Alvarez,*
　567 U.S. 709 (2012) ................................................................................9

*Wash. State Grange v. Wash. State Republican Party,*
　552 U.S. 442 (2008) ..............................................................................10

*Weaver v. Bonner,*
　309 F.3d 1312 (11th Cir. 2002) ............................................................18

*Whitehead v. BBVA Compass Bank,*
　979 F.3d 1327 (11th Cir. 2020) ..............................................................7

*Williams-Yulee v. Fla. Bar,*
　575 U.S. 433 (2015) ........................................................................23, 24

*Winter v. Wolnitzek,*
　834 F.3d 681 (6th Cir. 2016) ....................................................25, 28, 30

*Youngblood v. Florida,*
　No. 3:01-cv-1449-J-16MCR, 2006 U.S. Dist. LEXIS 4391 (M.D. Fla.
　Feb. 6, 2006) ..........................................................................................15

## Statutes

Fla. Stat. § 1001.361 ...........................................................................3, 13

vi

Fla. Stat. § 106.011(3)(d) ................................................................ 5

Fla. Stat. § 106.143(3) ........................................................... 3, 5, 19

Fla. Stat. § 106.23(2) .................................................................... 4

Fla. Stat. § 97.021(23) ............................................................. 3, 14

Fla. Stat. § 97.021(7)(d) ............................................................... 5

**Other Authorities**

Brandice Canes-Wrone, Tom S. Clark, and Jason P. Kelly, *Judicial Selection and Death Penalty Decisions*, 108.1 Am. Pol. Sci. Rev. 23 (2014) ............................................................................... 11

Claire S. H. Lim, James M. Snyder, and David Strömberg, *The Judge, the Politician, and the Press: Newspaper Coverage and Criminal Sentencing across Electoral Systems*, 7.4 Am. Econ. J.: Applied Econs. 103 (2015) ......................................................................... 11

Final Order, *Fla. Elections Comm'n v. Hetherington*, Case No. FEC 18-133, F.O. No. FOFEC 20-145W (FEC Sept. 25, 2020) ...................... 4, 5

Fla. Div. of Elections, Advisory Opinion DE 2003-02 (Feb. 21, 2003) ..... 4

Fla. Div. of Elections, Advisory Opinion DE 2010-02 (Mar. 3, 2010) ... 4, 5

Gerald C. Wright, *Charles Adrian and the Study of Nonpartisan Elections*, 61.1 Pol. Rsch. Q. 13 (2008) ................................................. 11

Michael J. Nelson, Rachel Paine Caufield, and Andrew D. Martin, *OH, MI: A Note on Empirical Examinations of Judicial Elections*, 13.4 State Pols. & Pol'y Q. 495 (2013) ........................................................ 11

**Regulations**

5 C.F.R. § 734.101 .................................................................... 10

**Constitutional Provisions**

Fla. Const. Art. IX, § 4(a) ....................................................................3, 13

INTRODUCTION

The Florida Election Commission ("FEC," "Commission," or "FEC Defendants") argues that it should be able to restrict Mr. Hetherington's right to share his party affiliation during a nonpartisan campaign because of the special value of nonpartisan campaigns. But "the notion that the special context of electioneering justifies an *abridgment* of the right to speak out on disputed issues sets our First Amendment jurisprudence on its head." *Republican Party v. White*, 536 U.S. 765, 781 (2002) ("*White I*"). Moreover, because of their role "in our society," candidates must be free "to express themselves on matters of current public importance," and "[i]t is simply not the function of government to select which issues are worth discussing or debating in the course of a political campaign." *Id*. at 781-82.

Nonetheless, asserting a need to protect a novel definition of nonpartisan elections, and claiming that Florida has inflicted only minimal injury by prohibiting the message Mr. Hetherington believes will best express his views on matters of current public importance, the

1

FEC Defendants argue that this court should grant summary judgment in its favor. Their arguments fail on every ground.

First, the FEC Defendants fail to show that Florida's election scheme creates constitutionally proper nonpartisan elections, or that its novel definitions allow it to make use of any precedent that has previously sustained nonpartisan elections.

Second, they incorrectly assert that other provisions of Florida law would enforce the same requirements on Mr. Hetherington, such that his injury is not redressable. The FEC has not shown that those provisions give the Defendants any enforcement power, much less redundant power to prohibit and punish discussion of party affiliation.

Third, the FEC Defendants fail to properly identify and address the constitutional scrutiny required for a content-based proscription of political speech. They must demonstrate that Florida's prohibition on mentioning partisan affiliation during a nonpartisan campaign is narrowly tailored to a compelling governmental interest. But they have neither demonstrated a compelling interest nor narrow tailoring.

2

Accordingly, the FEC Defendants' motion for summary judgment should be denied, and the motion filed by Mr. Hetherington should be granted.

STATEMENT OF FACTS

The Florida Constitution requires that school board members be "chosen . . . in a nonpartisan election." Fla. Const. Art. IX, § 4(a); *see also* Fla. Stat. § 1001.361 ("the election of members of the district school board shall be by vote of the qualified electors of the entire district in a nonpartisan election"). Florida defines a nonpartisan office as one "for which a candidate is prohibited from campaigning or qualifying for election or retention in office based on party affiliation." Fla. Stat. § 97.021(23).

Florida then controls what candidates may say in such elections through the requirements and restraints at Section 106.143. "A candidate for nonpartisan office is prohibited from campaigning based on party affiliation." Fla. Stat. § 106.143(3). In particular, "[a] political advertisement of a candidate running for nonpartisan office may not state the candidate's political party affiliation." *Id*.

3

Elaborating on the requirements at § 106.143(3), the Division of Elections states that candidates running for nonpartisan office may "not publicly represent or advertise [themselves] as . . . member[s] of any political party." Fla. Div. of Elections, Advisory Opinion DE 2003-02 at 2 (Feb. 21, 2003), https://bit.ly/2RxvpOR (Hetherington MSJ, Ex. A (ECF No. 67-3)); Fla. Stat. § 106.23(2) (requiring that the Commission follow the Division's binding opinions). But candidates may express past party leadership experience, "such as 'executive committee of _____ party.'" *Id.* Florida even allows nonpartisan officeholders to express their affiliation, once the election is over. *See* Fla. Div. of Elections, Advisory Opinion DE 2010-02 at 2 (Mar. 3, 2010), https://bit.ly/3gkP8vF (Ex. B (ECF No. 67-4)).

In 2018, Kells Hetherington ran for a nonpartisan seat on the Escambia County School Board. Hetherington Decl. ¶ 2 (Ex. F (ECF No. 67-8)). During the campaign, Mr. Hetherington described himself in the Escambia County voter guide as a "lifelong Republican." Final Order at 3, *Fla. Elections Comm'n v. Hetherington*, Case No. FEC 18-133, F.O. No. FOFEC 20-145W (FEC Sept. 25, 2020) (Ex. C (ECF No. 67-5)).

4

Acting on a complaint filed by Escambia County resident and former PTA President Michelle Salzman, the FEC found probable cause that Mr. Hetherington had violated Fla. Stat. § 106.143(3) when he stated that he was "[a] lifelong Republican." *Id*. On November 19, 2019, the FEC ordered Mr. Hetherington to pay a $500 fine, which it reduced upon reconsideration in August 2020 to $200. Final Order at 2, 4 (Ex. C (ECF No 67-5)). Mr. Hetherington paid the fine. Hetherington Decl. at ¶ 7 (Ex. F (ECF No. 67-8)).

Florida law recognizes an individual as a candidate for political office once she has filed qualification papers and subscribed to a candidate's oath, or once she has "appoint[ed] a treasurer and designate[d] a primary depository." Fla. Stat. § 97.021(7)(d); *accord* Fla. Stat. § 106.011(3)(d); *see also* Advisory Opinion DE 2010-02 at 2 (Ex. B (ECF No. 67-4)) ("This usually occurs when a person first appoints a campaign treasurer and designates a primary campaign depository."). On March 30, 2021, Mr. Hetherington established his candidacy for the 2022 election to the Escambia County School Board by filing Form DS-DE 9, Appointment of Campaign Treasurer and Designation of

5

Campaign Depository for Candidates. Hetherington Decl. at ¶ 8 (Ex. F (ECF No. 67-8)); Appointment of Campaign Treasurer (Ex. G (ECF No. 67-9)); Statement of Candidate (Ex. H (ECF No. 67-10)); Pre-File Form (Ex. I (ECF No. 67-11)). He also established a primary campaign depository. Hetherington Decl. at ¶ 9 (Ex. F (ECF No. 67-8)).

Mr. Hetherington wished to share his party affiliation in his current campaign—in his candidate statement and in meetings, messages, and conversations with voters and others—but he feared doing so because Florida actively enforces Fla. Stat. § 106.143(3). Hetherington Dec. at ¶¶ 11-12. On April 15, 2021, he filed the present action, requesting a declaration that § 106.143(3) is unconstitutional, facially and as applied to his speech; injunctive relief; nominal damages; and attorney's fees and costs. Complaint at 10-11 (ECF No. 1). He filed a motion for preliminary injunction on April 26, 2021 (ECF No. 12), which this Court granted on July 14, 2021 (ECF No. 51). While the Court granted the motions to dismiss by the Secretary of State and the Attorney General, as well as the motion to dismiss the FEC Defendants in their individual capacities, it denied the motions to dismiss the State Attorney and the

6

FEC Defendants in their official capacities. Dismissal Order at 13 (ECF No. 50); FEC Dismissal Order at 9 (ECF No. 57).

On December 27, 2022, the parties filed motions for summary judgment, including the motion by the FEC Defendants that Mr. Hetherington now opposes.

LEGAL STANDARD

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 210 (2014) (Roberts, C.J., controlling op.). Accordingly, the Defendants here bear a double burden. The party moving for summary judgment "bears the initial burden of proving the absence of a genuine issue of material fact." *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020). But because the Defendants bear the burden of proving the constitutionality of § 106.143(3), they must not only "affirmatively show the absence of a genuine issue of material fact," they must support their "motion[s] with credible evidence demonstrating that no reasonable jury could find for [Mr. Hetherington] on all of the essential elements of [this] case."

7

*Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013)

(citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)).

The Court must "view the evidence and all factual inferences therefrom

in the light most favorable to [Mr. Hetherington], and resolve all

reasonable doubts about the facts in [his] favor . . . ." *Melvin v. Fed.*

*Express Corp.*, 814 F. App'x 506, 512 (11th Cir. 2020) (internal

quotation marks omitted).

## ARGUMENT

## I. FLORIDA HAS GIVEN NO EVIDENCE THAT ITS ELECTION SCHEME CREATES CONSTITUTIONALLY PROPER NONPARTISAN ELECTIONS

Invoking an unsupported interest in "requir[ing] nonpartisan

elections" will not save § 106.143(3). FEC MSJ at 6.[1] Mr. Hetherington

is not challenging Florida's right to hold nonpartisan elections, as

nonpartisan elections are generally understood. And the State may not

---

[1] The FEC Defendants cite *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), to demonstrate that "[i]t is well settled that a State may require nonpartisan elections," FEC MSJ at 6. But *Timmons* addressed a ban on fusion ballots, where candidates are listed as the nominees of multiple parties, not the constitutionality of nonpartisan elections. *See Timmons*, 520 U.S. at 362-63.

redefine nonpartisan to whatever it wants, just so that it may take advantage of a name. That is, if Florida wants to take advantage of precedent upholding nonpartisan elections, then it must hold nonpartisan elections as defined in those cases. But if it wishes to be novel in how it defines nonpartisan election, then it must meet that novelty with additional support. Put differently, if Florida creates a new and novel interest in protecting nonpartisan elections, it must justify that interest with new evidence. *See Nixon v. Shrink Mo. Gov't Pac*, 528 U.S. 377, 391 (2000) ("The quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised."); *id*. at 392 ("We have never accepted mere conjecture as adequate to carry a First Amendment burden . . . ."); *McCutcheon*, 572 U.S. at 210 (same). And that is particularly true when dealing with content-based restrictions on speech, like that here. *See United States v. Alvarez*, 567 U.S. 709, 722 (2012) (requiring "persuasive evidence" before exempting "a novel restriction" from the "prohibition on content-based" laws (internal quotation marks omitted)); *Brown v. Entm't Merchs. Ass'n*, 564

9

U.S. 786, 792 (2011) (same); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121 (9th Cir. 2020) (same).

Contrary to Florida's novel scheme, whether primary voters "choos[e] a party's nominee" is the "constitutionally crucial" distinction between partisan and nonpartisan races. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 446 (2008); *see In re Springfield*, 818 F.2d 565, 566 (7th Cir. 1987) ("A nonpartisan election is not one without partisanship but one without primary elections to choose parties' candidates."); *see also* 5 C.F.R. § 734.101 ("Nonpartisan election means . . . [a]n election in which none of the candidates is to be nominated or elected as representing a political party . . . .").

A nonpartisan election may also be defined as an election where candidates' names do not appear on the ballot. *See Wash. State Grange*, 552 U.S. at 464 (Scalia, J., dissenting) (treating non-partisan elections as those "in which party labels have no place on the ballot").[2] Thus some

---

[2] *See also* Claire S. H. Lim, James M. Snyder, and David Strömberg, *The Judge, the Politician, and the Press: Newspaper Coverage and Criminal Sentencing across Electoral Systems*, 7.4 Am. Econ. J.: Applied

states hold elections classified as nonpartisan even though political

parties select the candidates, as long as the partisan affiliation does not

appear on the ballot.[3] But neither of these definitions involves a

_____

Econs. 103, 108 (2015), http://www.jstor.org/stable/24739061 (discussing three forms of judicial elections and noting that the "nonpartisan election system[ is] where multiple candidates compete without party identification on the ballot"); Brandice Canes-Wrone, Tom S. Clark, and Jason P. Kelly, *Judicial Selection and Death Penalty Decisions*, 108.1 Am. Pol. Sci. Rev. 23 (2014), http://www.jstor.org/stable/43654045 ("Many states use nonpartisan elections, in which the ballot does not specify the judicial candidates' partisan affiliations."); Michael J. Nelson, Rachel Paine Caufield, and Andrew D. Martin, *OH, MI: A Note on Empirical Examinations of Judicial Elections*, 13.4 State Pols. & Pol'y Q. 495, 498 (2013), http://www.jstor.org/stable/24710962 ("Typically, if the candidate's party identification appears next to their name on the ballot in a general election, the election is classified as partisan; if it does not, the election is nonpartisan."); Gerald C. Wright, *Charles Adrian and the Study of Nonpartisan Elections*, 61.1 Pol. Rsch. Q. 13, 15 (2008), http://www.jstor.org/stable/20299698 (discussing history of research on nonpartisan elections, which follow "[t]he simple rule of not having party labels on the ballot").

[3] *See* Nelson, *OH, MI*, 13.4 State Pols. & Pol'y Q. at 497. For example, the requirements for Ohio's "nonpartisan general election" prohibited "judicial candidates from being associated with their political parties on the general-election ballot," even while the parties chose the candidates and the candidates were "entirely free to associate themselves with the parties of their choice and express their party affiliations publicly in forums other than the general-election ballot." *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 332, 337 (6th Cir. 2016).

complete prohibition on all mention of partisan affiliation. Indeed, given that parties sometimes choose the candidates, such a prohibition is not part of the standard definition, nor of the accepted governmental interest in sustaining such elections.

But in setting up its "nonpartisan elections," Florida created a new and novel scheme. And it has not shown that "[i]t is well settled that" the state may require this scheme. FEC MSJ at 6. The only case cited by the FEC Defendants not only fails to support the scheme, it does not even address nonpartisan ballots or elections. *See Timmons*, 520 U.S. at 362-63 (discussing fusion ballots).

## II. THE FEC DEFENDANTS INCORRECTLY ASSERT THAT THIS COURT CANNOT GRANT RELIEF

The FEC Defendants incorrectly argue that Mr. Hetherington's challenge is not redressable because four statutory or constitutional provisions require the same restrictions on Mr. Hetherington's speech. But only one of them—the provision already challenged by Mr. Hetherington—gives the Defendants any power to restrict his speech. Two of the others are perfectly consistent with Mr. Hetherington's

speech. And none of the other provisions grant the enforcement authority necessary to create redressability concerns.

Both Article IX, Section 4(a) of the Florida Constitution and Florida Statutes § 1001.361 merely require nonpartisan elections. Fla. Const. Art. IX, § 4(a) ("chosen . . . in a nonpartisan election"); Fla. Stat. § 1001.361 ("the election of members of the district school board shall be by vote of the qualified electors of the entire district in a nonpartisan election"). Mr. Hetherington's speech is perfectly consistent with generally accepted definitions for nonpartisan elections—with requirements that party nominations be removed from ballots—and with the concomitant governmental interests. And neither of these provisions grants the Commission or the State Attorneys any enforcement authority to control candidate speech.

Moreover, the definition of nonpartisan office could be susceptible of a constitutional interpretation, one consistent with Mr. Hetherington's speech. Section 97.021 merely states that a "Nonpartisan office" is one "for which a candidate is prohibited from campaigning or qualifying for election or retention in office based on party affiliation." Fla. Stat.

13

§ 97.021(23). If the Commission interpreted campaigning for "office based on party affiliation" to prohibit only assertions that a candidate is the party nominee for office, that would be perfectly constitutional. And it would not affect Mr. Hetherington's speech or challenge in any way whatsoever. It requires additional, unconstitutional interpretation to make the provision prohibit any mention of party membership.

But, even if the definition did encompass Mr. Hetherington's speech, nothing about the definition grants the Defendants power to control that speech. There is no provision in it directing the Defendants to take any action. There is no provision in it authorizing any punishments. It is a definition, and without something more it grants the Defendants no enforcement power.

Indeed, had Mr. Hetherington just challenged Fla. Stat. § 97.021(23), without challenging § 106.143(3), the Defendants would likely be arguing for dismissal based on lack of causation, claiming that any relief granted would not "clarify[] and settl[e] the legal relations" and that the threats were "conjectural and hypothetical." *Youngblood v.*

14

*Florida*, No. 3:01-cv-1449-J-16MCR, 2006 U.S. Dist. LEXIS 4391, at \*18 (M.D. Fla. Feb. 6, 2006).

Furthermore, it is far from certain that redressability would be a concern here even if there were multiple provisions redundantly restricting Mr. Hetherington's speech. The FEC Defendants cite only to *Renne v. Geary*, 501 U.S. 312 (1991). The Court there, however, merely said there was "reason to doubt" redressibility given redundant provisions. But that statement was made while discussing third-party standing, and the court went on to hold that the action was not ripe. *Id.* at 319-325. Apart from *Renne*'s dicta expressing uncertainty about redressability, the FEC Defendants provide no support for its justiciability argument. That is hardly a foundation to allow the state to continue violating Mr. Hetherington's rights, particularly when a decision declaring Mr. Hetherington's constitutional rights here would surely give the state pause in enforcing any subsequent statute. Indeed, if the Defendants tried to enforce a similar statute, they would open themselves to individual capacity claims to which qualified immunity would not apply.

15

Regardless, the only grant of enforcement power over Mr. Hetherington's speech is at § 106.143(3), the statutory provision challenged here. The Court should reject the FEC Defendants' redressability arguments. To the extent that the Court finds merit in the FEC's redressability arguments, however, Mr. Hetherington would ask that the court grant the contemporaneously filed motion to amend the complaint in lieu of dismissal.

III.   THE FEC DEFENDANTS HAVE FAILED TO SHOW THAT § 106.143(3) SURVIVES CONSTITUTIONAL SCRUTINY

A. Section 106.143(3) exacts a First Amendment harm subject to strict scrutiny

The FEC Defendants argue for a lesser standard of scrutiny, without recognizing that such a standard cannot apply given that § 106.143(3) both prohibits speech and does so based on content. Just as the Supreme Court has held that content-based laws trigger strict scrutiny, so do laws that burden—that prohibit or restrict—political speech.

The Supreme Court has held that "political speech must prevail against laws that would suppress it." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). "Laws that burden political speech

16

are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 340 (internal quotation marks omitted).

The word "burden" is a term of art in the political speech context, referring to government action that prohibits or directly restricts speech, and strict scrutiny applies to any such government action. *Compare Buckley v. Valeo*, 424 U.S. 1, 58-59 (1976) (*per curiam*) (discussing "substantial and direct restrictions" on political expression by expenditure limits), *with id.* at 68 (noting that disclosure requirements are "the least restrictive means"); *compare Citizens United*, 558 U.S. at 339-40 (noting that a "ban on speech" was a "burden . . . subject to strict scrutiny" (internal quotation marks omitted)), *with id.* at 366, 369 (describing disclosure as "a less restrictive alternative" subject only to "exacting scrutiny" (internal quotation marks omitted)); *compare Fed. Election Comm'n v. Wis. Right to Life*, 551 U.S. 449, 464 (2007) (Roberts, C.J., controlling op.) (applying strict scrutiny to prohibition on corporate speech), *with Citizens United*, 558 U.S. at 366-

17

69 (applying exacting scrutiny to disclaimer and disclosure provisions for corporate speech).

Despite its attempt to downplay § 106.143(3) as "only a slight burden on constitutional rights," FEC MSJ at 8, it is a prohibition on speech. As such, it is a "burden" on speech in the political speech context, and it is subject to strict scrutiny. Florida "seeks to restrict directly the offer of ideas by a candidate to the voters." *Brown v. Hartlage*, 456 U.S. 45, 53 (1982) ("*Hartlage*"). This limits a candidate's ability to vigorously advocate her election by prohibiting the messages that she believes will best inform and appeal to her constituents. Accordingly, the law must survive strict scrutiny. *Citizens United*, 558 U.S. at 339-40; *Hartlage*, 456 U.S. at 53-54 (requiring compelling interest); *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002) (requiring strict scrutiny).

Strict scrutiny also applies because Florida has crafted a content-based restriction. A law is "content based if [it] applies to particular speech because of the topic discussed or the idea or message expressed," *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015), and Section 106.143 applies only when a candidate discusses a particular topic: "the

18

candidate's political party affiliation." Fla. Stat. § 106.143(3); *see also*

*White I*, 536 U.S. at 768, 774 (holding that "the partisan affiliation ban

. . . prohibit[ed the candidate's] speech," and was thus a "content-based

restriction on speech subject to strict scrutiny"); *Siefert v. Alexander*,

608 F.3d 974, 981 (7th Cir. 2010) (holding that a law was content based

when it prohibited expressions of party affiliation during judicial

campaigns). As a content-based law, Florida's speech restriction is

"presumptively unconstitutional and may be justified only if the

government proves that [it is] narrowly tailored to serve compelling

state interests." *Reed*, 576 U.S. at 163.

The FEC Defendants nonetheless argue that less demanding

scrutiny should apply because the speech restriction "furthers an

'important regulatory interest'" and the burden is "trivial." FEC MSJ at

9. But, as *Reed* made clear, the government cannot so easily escape the

strict scrutiny required for facially content-based laws. Two categories

of laws are content-based: facially content-based laws, i.e., those that

apply because of the topic discussed or message expressed, and facially

neutral laws that the government nonetheless adopted to target speech.

19

*Reed*, 576 U.S. at 163-64. Courts had begun to turn this analysis on its head, however, holding that facially content-based laws were content-neutral so long as the laws did not fit into the second category. That is, if the government could show a benign or other content-neutral reason for a facially content based law, some courts would hold that the law was content neutral. That is what the Supreme Court reprimanded the Ninth Circuit for doing in *Reed*, for "skip[ping] the crucial first step in the content-neutrality analysis," *id*. at 165, and that is what the FEC Defendants ask the Court to do here. Just because they plead an important governmental interest and a minimal burden on Mr. Hetherington, they cannot escape the conclusion that Florida's speech restriction is content based under *Reed*'s first step. Florida targets the speech of nonpartisan candidates based on the messages they convey, and § 106.143(3) is therefore content-based and subject to strict scrutiny.

The cases cited by the FEC Defendants do nothing to change this. In particular, *Timmons v. Twin Cities Area New Party*. 520 U.S. 351 (1997), and *Burdick v. Takushi*, 504 U.S. 428 (1992), are inapposite

because those cases dealt with associational rights in the ballot context, not speech rights during the campaign. The sliding scale test from *Timmons*—strict scrutiny for "severe burdens" and "less exacting review" for "[l]esser burdens"—explicitly applies when balancing "associational rights"—not free speech rights—against the state's interests in controlling the ballot. 520 U.S. at 358. Indeed, the Court went on to distinguish ballot regulation from restrictions during the campaign. *See id*. at 360-61.

*Burdick* was similarly a "ballot access case," 504 U.S. at 437, a challenge to a prohibition on write-in candidates that caused election officials to ignore a "'protest vote' for Donald Duck," *id*. at 438. But Hawaii never prevented Burdick from advocating for Donald Duck's election. That is, the law left "other means available . . . to voice such generalized dissension from the electoral process." *Id*. at 441.

Thus the cases cited by the FEC Defendants provide no basis for departing from the strict scrutiny generally required for the content-based proscriptions on political speech.

21

B. The State has not demonstrated a compelling interest

1. *The FEC Defendants fail to raise or demonstrate the interest in preventing corruption or the appearance of corruption*

The FEC Defendants have not even mentioned preventing actual or apparent corruption as a potential governmental interest. But the Supreme Court has "consistently rejected attempts to suppress campaign speech based on" any "legislative objective[]" other than "preventing corruption or the appearance of corruption." *McCutcheon*, 572 U.S. at 207 (Roberts, C.J., controlling op.); *id.* at 192 (contrasting permissible regulations targeting corruption from "the impermissible desire simply to limit political speech"). Even if the Defendants had raised the anti-corruption interest, however, the restriction here could not further it. The permissible governmental interest in preventing actual or apparent corruption is limited to "a specific type of corruption—'*quid pro quo*' corruption," *id.* at 207—and the law here does not target "dollars for political favors," *id.* at 192.

2. *Invoking an interest in preserving nonpartisan offices fails to support the speech restriction*

Even though the only accepted interest for suppressing campaign speech is "preventing corruption or the appearance of corruption," *id.* at

22

207, the FEC Defendants vaguely raise an interest in "preserving nonpartisan offices," FEC MSJ at 11. This assertion suffers from a number of problems. First, as discussed above, the FEC Defendants are not asserting an interest in protecting nonpartisan elections as generally understood. Second, the case they cite to support this interest—*In re Code of Jud. Conduct (Canons 1, 2, and 7(1)(B)*, 603 So. 2d 494 (Fla. 1992)—has nothing to do with what candidates may say about themselves in nonpartisan elections, but with whether judges may endorse other candidates.

Third, in relying on a judicial code of conduct case to support this asserted interest, the FEC Defendants ignore that judicial elections carry very different interests than regular nonpartisan elections, and that federal courts have held that regulations like the speech restriction here are unconstitutional even in the more permissive judicial context.

"States may regulate judicial elections differently than they regulate political elections, because the role of judges differs from the role of politicians." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 446 (2015). That is, there is a fundamental difference between judicial and nonjudicial

23

offices: "Politicians are expected to be appropriately responsive to the preferences of their supporters." *Id*. (quoting *McCutcheon*, 572 U.S. at 227). A judge, on the other hand, "must observe the utmost fairness, striving to be perfectly and completely independent, with nothing to influence or controul [sic] him but God and his conscience." *Id*. at 447 (internal quotation marks omitted).

These differences are intrinsic to our constitutional form of government: Due process demands fairness and impartiality from the judiciary, *see Republican Party v. White*, 416 F.3d 738, 753 (8th Cir. 2005) ("*White II*"), thus permitting additional impositions on First Amendment rights in the judicial context. This means that judicial elections may be regulated "differently," *Williams-Yulee*, 575 U.S. at 446, with stronger limits and restrictions. It also means that outside that context, those regulations must fail. In situations where "responsiveness is key to the very concept of self-governance through elected officials," *Williams-Yulee*, 575 U.S. at 446 (internal quotation marks omitted), our form of government requires open conversation where candidates must be free to outline their positions on issues—

24

including the positions communicated in shorthand by party
membership.

Furthermore, the differences between judicial elections and other
nonpartisan elections only highlights the unconstitutionality of
Florida's speech restriction. If federal courts have held that restrictions
like Florida's are unconstitutional in the judicial context, where the
governmental interest is greater and courts are more permissive, then
such restrictions must be unconstitutional outside the judicial context.
And federal courts have held that such restrictions are unconstitutional
even in the judicial context. *See Winter v. Wolnitzek*, 834 F.3d 681, 688
(6th Cir. 2016) (holding judicial canon unconstitutionally vague and
overbroad because it would chill candidates' "constitutional right to
portray themselves as a member of a political party"); *Siefert*, 608 F.3d
at 981 (holding judicial partisan affiliation ban unconstitutional
because "[t]he state does not have a compelling interest in preventing
candidates from announcing their views on legal or political issues, let
alone prohibiting them from announcing those views by proxy"); *White
II*, 416 F.3d at 745, 754-63 (holding unconstitutional a "partisan-

activities clause" that prohibited judicial candidates from "identify[ing] themselves as members of a political organization"); *cf. Ohio Council 8 Am. Fed'n of State*, 814 F.3d at 336 (upholding ban on party affiliation on ballots in judicial elections because "of the extensive remaining ways" to share the information). Florida's prohibition on mentioning one's partisan affiliation is unconstitutional.

   3. *Attempting to minimize the burden on Mr. Hetherington's speech does not demonstrate a compelling governmental interest*

The FEC Defendants next attempt to demonstrate a compelling governmental interest by asserting that the burdens on Mr. Hetherington's speech are minimal. This argument is both irrelevant and erroneous.

"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *McCutcheon*, 572 U.S. at 210. The Supreme Court has "never accepted mere conjecture as adequate to carry [this] First Amendment burden.," *id*., and this argument by the FEC Defendants is not even conjecture about an interest belonging to the government: Attempting to minimize the

burden on Mr. Hetherington does nothing to show that Florida has a compelling interest in restricting speech.

Moreover, the FEC Defendants are simply wrong in denying the constitutional injury. They claim that Mr. Hetherington's First Amendment injury is minimal because he could find some other way to convey the meaning behind his prohibited message. But the question is not whether a speaker may try to find some way around a government restriction on speech without still landing in trouble. The question is whether the government has injured a speaker by prohibiting her chosen message. And Florida's restriction injures speakers because the First Amendment guarantees to speakers the right to decide "what to say and what to leave unsaid." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp.*, 515 U.S. 557, 573 (1995) (quoting *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 11 (1986) (plurality opinion)). Moreover, the FEC Defendants cannot deflect from this injury, because courts "cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process." *Cohen v. Cal.*, 403 U.S. 15, 26 (1971). Were First

Amendment protections so easily circumvented, "governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views." *Id.*; *see also Dana's R.R. Supply v. Att'y Gen.*, 807 F.3d 1235, 1247 (11th Cir. 2015) (noting that Florida's attempt to control particular language "deprived [the speaker] of its full rhetorical toolkit" and "the marketplace of ideas of the full range of public sentiment"). Florida cannot so simply escape accountability for restricting speech.

Furthermore, even if the weight of the burden on Mr. Hetherington's speech were relevant in measuring the state's interest, courts have already demonstrated that the injury is great, given all the information carried by the message he wishes to share. *See Carey v. Wolnitzek*, 614 F.3d 189, 202 (6th Cir. 2010) ("A party platform after all is nothing more than an aggregation of political and legal positions, a shorthand way of announcing one's views on *many* topics of the day." (emphasis in original)); *Winter*, 834 F.3d at 688 (noting that a statement of partisan affiliation "is shorthand" for taking stances on public issues).

C. The FEC Defendants have failed to show that the speech restriction is narrowly tailored

The FEC Defendants begin their argument that § 106.143(3) is narrowly tailored by again trying to minimize the burden on Mr. Hetherington. But that has nothing to do with whether Florida's "restriction furthers a compelling interest," *Citizens United*, 558 U.S. at 340 (internal quotation marks omitted), or whether there is a less "restrictive means of achieving" that interest, *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

Moreover, under the generally accepted definition for nonpartisan elections, Florida's speech restriction fails tailoring. *See* Hetherington Memo at 15-25. First, it is "hopelessly underinclusive," *Reed*, 576 U.S. at 171, and that for multiple reasons: 1) because it allows candidates to dance around partisan affiliation, all but stating their affiliation as long as they do not utter the magic words, Hetherington Memo at 16; 2) because it prohibits disclosure of party membership but not party membership itself, where "undisclosed potential influence on candidates [would be] far worse that its disclosed influence," *Carey*, 614 F.3d at 202, Hetherington Memo at 16-17; and 3) because it "restrict[s] speech

29

only during a campaign," *White II*, 416 F.3d at 757-58, leaving candidates free to express their affiliation before they run and after they win, Hetherington Memo at 17-19.

Second, § 106.143(3) is "seriously overinclusive." *Brown*, 564 U.S. at 805. Florida goes far beyond controlling the ballot or even "prevent[ing] candidates from identifying themselves as *the* nominee of a political party." *Winter*, 834 F.3d at 688 (emphasis in original)). Instead, it prohibits all speech that mentions partisan affiliation, whether in voter guides, campaign rallies, debates, town halls, interviews, going door to door, or even saying hello at the supermarket. As this Court has already noted, this is "an instance of burning the house to roast a pig." Preliminary Injunction Order at 12 (internal quotation marks omitted); *see also* Hetherington Memo at 19-20.

Third, the speech restriction is not "the least restrictive means to further" the state's interests. *McCutcheon*, 572 U.S. at 197. Indeed, there are many less restrictive means. *See* Hetherington Memo at 20-23. Florida could simply prohibit partisan affiliation on the ballot. It could prohibit candidates from stating that they are the party nominees

30

for office. And it could require recusal if some conflict of interest ever arose relating to party membership.

The FEC Defendants have not given any evidence to demonstrate that these or any other alternatives are unworkable, or that it needs to erect second, third, and even fourth fences around the law to protect against any hint of partisan danger. Defendants have the burden to demonstrate that these other alternatives are unsatisfactory—that the need to control Mr. Hetherington's speech is not "mere conjecture," *Shrink Mo. Gov't Pac*, 528 U.S. at 392, or that the government's justifications are not "purely hypothetical," *Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2377 (2018) (internal quotation marks omitted); *see also Siefert*, 608 F.3d at 981-83 (holding that law failed tailoring because the government had not demonstrated that recusal was an "unworkable alternative"). It has not provided any such evidence. For example, the Defendants have not shown that nonpartisan elections have fallen apart in states where candidates can share their party affiliation. *See Carey*, 614 F.3d at 203 (questioning law when other jurisdictions could meet the asserted interest).

31

CONCLUSION

The FEC Defendants have failed to demonstrate that Florida's novel scheme can draw any strength from previous precedent related to nonpartisan elections, or that it has any other compelling interest supporting the speech restriction at § 106.143(3). And they have failed to meet the government's burden to demonstrate that a content-based proscription on political speech is narrowly tailored to any compelling interest. Thus, the Court should reject their motion for summary judgment and grant Mr. Hetherington's motion.

Furthermore, the FEC Defendants have failed to show that this challenge should be dismissed for lack of redressability, as the provisions the FEC Defendants raise as redundant restrictions on Mr. Hetherington's speech do not grant the Defendants any enforcement power. Should the Court find any merit to the FEC Defendants' justiciability argument, however, Mr. Hetherington asks that the Court grant the contemporaneously filed motion to amend the Complaint to also challenge Fla. Stat. Ann. § 97.021(23), and that it hold that

§ 97.021(23) is unconstitutional for the same reasons that § 106.143(3)

is unconstitutional.

Dated: January 18, 2022          */s/ Owen Yeates*

                                            Owen Yeates (pro hac vice)
Institute for Free Speech
1150 Connecticut Ave., NW, Ste. 801
Washington, DC 20036
oyeates@ifs.org
Tel.: 202-301-3300
*Counsel for Plaintiff*

33

CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the word limits at

N.D. Fla. Loc. R. 7.1(F). As measured by Microsoft Word's internal

count, the memorandum is 5,895 words, exclusive of the case style,

tables of contents and authorities, signature block, and certificates.

Dated: January 18, 2022                    */s/ Owen Yeates*
                                            Owen Yeates


CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of

the foregoing document with the Clerk of Court using the CM/ECF

system, which will serve all attorneys of record.

Dated: January 18, 2022                    */s/ Owen Yeates*
                                            Owen Yeates