## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

KELLS HETHERINGTON,                     CASE NO: 3:21-CV-671-MCR-EMT

Plaintiff,

v.

LAUREL M. LEE, in her official
capacity as Florida Secretary of State, et al.,
Defendants.

_____/

## FEC DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT[1]

Defendants, Joni Alexis Poitier, Barbra Stern, Kymberlee Curry Smith, Jason Todd Allen, and J. Martin Hayes (collectively, "FEC Defendants"), by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's November 3, 2021, Scheduling Order (DE #64), hereby responds in opposition to Plaintiff Kells Hetherington ("Plaintiff" or "Hetherington") Motion For Summary Judgment (DE #67), Plaintiff's Memorandum of Law (DE #67-1) and the exhibits incorporated thereto (collectively the "Motion"), and state as follows:

### INTRODUCTION

_____

[1] Defendants will also be filing a motion to strike portions of Plaintiff's memorandum of law and Plaintiff's counsel's affidavit, as being hearsay and lacking proper foundation.

Plaintiff speaks out both sides of his mouth – at one time arguing that Section 106.143(3), Florida Statutes "seeks to restrict directly the offer of ideas by a candidate to the voters" (DE #67-1 10 (quoting *Brown v. Hartlage*, 456 U.S. 45, 53 (1982))), and at other times stating that the law nevertheless permits him to make statements that "inform the electorate of a candidate's political party affiliation" (DE #67-1 at 16). Plaintiff cannot have it both ways.

More importantly, however, throughout this litigation Plaintiff has failed to identify *any* idea or message that he contends the law prevents him from communicating. That is precisely the point – the statute serves the state's well recognized interest in maintaining nonpartisan elections *without* burdening or restricting candidates' ability to communicate ideas or messages to the electorate. Thus, Plaintiff's claims fail as a matter of law, and Plaintiff's multiple straw man arguments to the contrary are legally irrelevant.

The ultimate question here is whether the citizens of a state may require some elections to be nonpartisan.  Florida's citizens have spoken to say that they wish it, and changed Florida's Constitution accordingly for school board elections. The voters, through their elected representatives also enacted § 106.143, Fla. Stat., to describe the boundaries of nonpartisan elections.  Plaintiff wants to thwart the will of the citizens of Florida and advertise his political party affiliation.  There cannot be any doubt that advertising his party affiliation is the same as stating that

he is running as a Republican.  His conceded goal is to garner votes from voters who will vote party lines, rather than those who will vote based on the positions Plaintiff has taken on issues.  His goal is not to inform voters regarding any issue, or any action that he might take if elected.  Instead, he wants to get elected based on what voters may infer from party affiliation, which obviously can result in as many different inferences as there are voters.

Contrary to Plaintiff's arguments, Plaintiff is not prevented from expressing any idea to any voter.  The sole limitation on Plaintiff is expressing the one particular label that would turn his election into a partisan election rather than a nonpartisan election.

Plaintiff proposes a number of suggestions that he thinks might be more reasonable than what the citizens of Florida want.  His suggestions are sometimes inapplicable, mostly unworkable, and in every case are not what the citizens of Florida have shown that they desired, through constitutional amendment and legislation.

## PLAINTIFF'S UNSUPPORTED FACTUAL STATEMENTS

Plaintiff's Statement of Facts (DE #67-1 at 3-6) contain multiple objective and demonstrable deficiencies, including Plaintiff's failure to provide the requisite supporting citations to the record, and improper reliance upon unsubstantiated and conclusory statements. First, Plaintiff's Statement of Facts improperly contains

myriad legal conclusions, arguments, and statements of law, relying on Florida statutes and Advisory Opinions. (DE #67-1 at 3-5.)   Defendants also object to Plaintiff's use of hearsay statements from Ballotpedia.com and the Florida School Board Association (DE #67-1 at 27-29).   Rule 56, Fed. R. Civ. P., requires that the facts presented be admissible in evidence.   There is no apparent exception to hearsay for any of these statements of fact by Plaintiff.   Plaintiff attempts to argue that there are many nonpartisan elections, and thus the alleged harm is greater. However, there is no admissible evidence that the various other elections are indeed nonpartisan, or that the statute at issue would apply to those elections. When stripped of the improper legal argument and allegations unsupported by competent evidence, Plaintiff's Statement of Facts can be boiled down to the following relevant facts:

- Plaintiff established his candidacy for the 2022 election to the Escambia County School Board (DE #67-1 at 5);

- Plaintiff contends that he wished to share his party affiliation in his current campaign, in his candidate statement and in meetings, messages, and conversations with voters and others (DE #67-1 at 5);

- Plaintiff contends that he did not share his party affiliation as desired because he feared doing so due to a perceived threat that Defendants would enforce Fla. Stat. § 106.143(3) (DE #67-1 at 5);

- Plaintiff then brought this action alleging that Section 106.143(3) is unconstitutional facially and as-applied to Plaintiff (DE #67-1 at 6).

Additionally, although Plaintiff's Motion fails to include the following undisputed facts, these facts are relevant to this dispute and preclude entry of summary judgment in favor of Plaintiff:

- Plaintiff intends to use the phrase "lifelong Republican" to garner votes based solely on his party affiliation (*See* DE # 69-2, Pltf.'s Resp. to FEC Defs.' Interrog. No. 2, No. 4);[2]

- Plaintiff cannot identify any meaning to the phrase "lifelong Republican," that he was unable to impart to voters through brief alternative words (*See* DE # 69-2, Pltf.'s Resp. to FEC Defs.' Interrog. No. 5);

- Plaintiff cannot identify any communication other than the phrase "lifelong Republican," that the challenged statute proscribes (*See* DE # 69-2, Pltf.'s Resp. to FEC Defs.' Interrog. No. 9);

- Plaintiff has demonstrated that he can coherently and concisely communicate the message that he purportedly wishes to impart with the phrase "lifelong Republican" (*See* DE # 69-2, Pltf.'s Resp. to FEC Defs.' Interrog.; No. 3 (members of the teaching staff and senior administrators needed to be held to account for the shortcomings of the school district), No. 5 (same, and emphasizing fiscal responsibility and personal freedoms, and No. 7 (enthusiastically supporting President Trump's America-first agenda).

## ARGUMENT

### I. Plaintiff Fails to Meet His Burden to Establish That He Is Entitled to Summary Judgment as a Matter of Law and That No Genuine Issues of Material Fact Exist

---

[2] A true and correct copy of Plaintiff Kells Hetherington's Responses to FEC Defendants' First Set of Interrogatories is attached to as Exhibit B (DE #69-2) to FEC Defendants' Motion for Summary Final Judgment (DE #69).

Under the *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) summary judgment standard the movant always bears the initial burden of identifying portions of the pleadings and discovery in the record that demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial. *Id.* at 323 ("Of course, a party seeking summary judgment *always bears the initial responsibility* of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.") (emphasis added). If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. Here, Plaintiff has failed to meet his burden to demonstrate that he is entitled to summary judgment as a matter of law, and as such, the Motion must be denied.

A.      **Plaintiff's Failure to Challenge Florida's Legal Framework for Nonpartisan Schoolboard Elections is an Implicit Acknowledgement of its Constitutionality**

As explained in further detail in FEC Defendants' Motion for Summary Final Judgment (DE 69) ("FEC Motion"), Plaintiff does not challenge the multiple levels of Florida constitutional and statutory law that establish nonpartisan schoolboard elections in Florida. (*See* FEC DE #67-1 at 2-4.) By failing to

challenge this legal framework, Plaintiff implicitly acknowledges the right of the citizens of Florida to hold nonpartisan elections for school board members (and for the judiciary).

First, Plaintiff does not challenge the 1998 amendment to the Florida Constitution which mandates that members of local school boards be chosen in nonpartisan elections. *See* Fla. Const. art. IX § 4(a) ("In each school district there shall be a school board composed of five or more members chosen by vote of the electors in a nonpartisan election"). Nor does Plaintiff challenge the statutory provisions that implement and effectuation Article IX, Section 4(a) of the Florida Constitution – such as Section 97.021(23), Florida Statutes, which defines "nonpartisan office" as "an office for which a candidate is prohibited from campaigning or qualifying for election or retention in office based on party affiliation."[3] Likewise, Plaintiff does not challenge Section 1001.361, Florida Statutes, which states that "the election of members of the district school boards shall be by . . . nonpartisan election[.]" Plaintiff's sole attack is against Section 106.143(3)'s provision that "[a] political advertisement of a candidate running for nonpartisan office may not state the candidate's political party affiliation . . . [and a] candidate for nonpartisan office is prohibited from campaigning based on party

---

[3] For this reason, Plaintiff's reliance on *In re Springfield* is misplaced. *See* 818 F.2d 565, 566 (7th Cir. 1987) (defining a nonpartisan election as "one without primary elections to choose parties' candidates.") (cited at DE #67-1 at 22).

affiliation." However, Section 106.143(3) is squarely in line with the statutory definition of "nonpartisan office," which Plaintiff does not challenge, *see* § 97.021(23), Fla. Stat., and is consistent with Florida's Constitutional mandate, *see* Fla. Const. art. IX § 4(a). Even if Plaintiff succeeded on his claims challenging § 106.143(3) – which he will not – the remaining legal framework would remain intact. Therefore, Plaintiff's requested relief would not redress the substance of his alleged injury, and his Motion should be denied on this basis. *See Renne v. Geary*, 501 U.S. 312, 319 (1991) (explaining that a party seeking to invoke the authority of federal courts must show that the alleged injury is likely to be redressed by the requested relief).[4]

### B.   The Constitutionality of Nonpartisan Elections Is Well Established

Nonpartisan elections have been used historically and broadly across the State of Florida and across the Country. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 362-63 (1997); *see also Dade Cnty. v. Young Democratic Club of Dade Cnty.*, 104 So. 2d 636, 639 (Fla. 1958) ("The non-partisan election of

---

[4]  As information for the Court, Senate Joint Resolution 244 is currently pending in the Florida Legislature.  In its current form, this resolution would place a constitutional amendment on the ballot to return school board elections to being partisan races.  In its current form, school board elections would be partisan elections in 2024, if passed by the voters. https://flsenate.gov/Session/Bill/2022/244/BillText/Filed/HTML  (Although this reference might suffer from the same infirmities as many of Plaintiff's references, Defendants do not offer this as evidence to support any argument, but instead as information for the Court, and opposing counsel.

officers is a question of policy involving no constitutional determination . . . Non-partisan balloting is not new in this country. It has been many times employed in the election of judicial and other officers and has been upheld."). Moreover, Plaintiff *has not challenged* the constitutionality of nonpartisan elections generally, or the statutory and constitutional framework for nonpartisan elections in Florida.[5]

> ### C.   Section 106.143(3) Is Facially Constitutional and Constitutional As Applied to Plaintiff

> #### 1.   Plaintiff Concedes That He Is Not Harmed by the Statute

To maintain this claim, Plaintiff must satisfy two prongs: "First, the Plaintiff must [establish] that some person has deprived him of a federal right." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).   Here, Plaintiff's view of the statute is that he is not actually suffering any harm.  Plaintiff takes the unusual position that the statute does not actually prevent him from the speech he claims to be illegally stifled.  He wants to advertise and campaign on being a lifelong Republican.  Yet he concedes that he *is allowed* to advertise his partisan-related experience which he states "all but declare[s] that [he] is a Republican…"  (DE #67-1 at 16)  In Plaintiff's words,

---

[5] Notably, the Florida Supreme Court recently considered and declined to rule on the constitutionality of a similar provision of Section 105.071(3), Florida Statutes, prohibiting candidates for judicial office from "[p]ublicly represent[ing] or advertis[ing] herself or himself as a member of any political party." *See Re Decker*, 212 So. 3d 291, 302 n.5 (Fla. 2017) ("we decline to rule on the constitutionality of section 105.071 or the provisions of the Code of Judicial Conduct that prohibit a candidate from publicly stating his or her affiliation with or support for a political party.").

the *statements that the statute permits* are "proxies to inform the electorate of a candidate's political party affiliation." *Id*.  Therefore, from Plaintiff's own argument, he has not suffered any harm, and thus he cannot be heard to argue that he has been deprived of a federal right.

### 2. Floridians Impose Only a Slight, if Any, Burden on Campaign Speech

As noted above, Plaintiff argues that the speech that the statute permits also allows Plaintiff to engage in the speech he desires to utter.  Therefore, the statute imposes no burden on speech, and if there is a burden, it is only trivial.

The proper test for the statute's constitutionality is a determination of whether the law furthers an "important regulatory interest." *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997).  As many states have done, with many elections, Floridians have determined that it is best for school board candidates to run for office without advertising or campaigning on party affiliation. Florida's effect is to have candidates run on ideas – any and all ideas – rather than a party label which carries no specific information.  Other states have imposed different versions of this idea, with different goals.  Most of these are not applicable to Florida's statute due to those different goals, and the different scope of their laws.  Further, Florida's school board restriction is also rooted in Florida's Constitution, creating another distinction to most other states' laws.

Respectfully, Defendants assert that opinions of other courts cannot be applied to this case, because Florida's school board elections are different in kind from judicial elections and others discussed by Plaintiff's cases. Unlike most of Plaintiff's cases, Florida places no restrictions on what Plaintiff states about his position on the issues, or on the law, or regarding what he wants to accomplish if elected. And, at least for a school board position, a party label fails to inform voters of any position of the candidate. A "lifelong Republican" might want higher teachers' salaries to support education, or might want to reduce teachers' salaries to put more funding into educational aids, or school sports, or Magnet programs, or programs for special needs students. He might want to work to increase school funding, or instead try to work within the funding already in place to be a good steward of the County's money, and be fiscally responsible. He might be anti-union, thinking the union had overreached in the past, or he might be pro-union, thinking that teachers need more support than they have received in the past. He might want to focus on education basics such as the "three 'Rs," or might want to increase other aspects of education, or extracurricular activities. In short there is no message regarding education created by uttering the phase "lifelong Republican." The only message is party affiliation.

Courts have referred to party affiliation as adopting that party's "platform." Respectfully, Defendants disagree that this is the case. Instead, a candidate using

party affiliation is dodging the question of what he stands for.  Instead of stating a

position or idea, "party affiliation" is a nebulous term that no one could later fault

the candidate for abandoning – because there was no meaning in the first place.

And as stated in Defendant's motion for summary judgment, the party platform has

no content other than "to enthusiastically support the President's [*i.e.* President

Trump's] America-first agenda" – hardly useful to any voter regarding a school

board member.  (*See* DE #69, Def's Motion For Summary Judgment, Ex. B, Pltf.'s

Resp. to FEC Defs.' Interrog. No. 7.)

Florida is not restricting any expression of an idea.  Florida's restriction is

on a label.  It is the party label that Floridians have deemed to be inappropriate for

nonpartisan elections.  Plaintiff would prefer otherwise.  However, Plaintiff

essentially concedes that the label of "lifelong Republican" does not have a

particular meaning.  Instead, Plaintiff wishes to use the label as a substitute for

stating his position on any issue, to hope that voters will read into the label

whatever the voters want.

**3.      Florida's Law Survives Strict Scrutiny**

**a.      Section 106.143(3) Satisfies the Compelling Interest Requirement under Strict Scrutiny**

To the extent this Court determines that § 106.143(3) is subject to the more

exacting strict scrutiny analysis, Plaintiff's motion should still fail because the law

is narrowly tailored to promote the State's compelling interesi in ensuring the

integrity of nonpartisan elections.  Courts have repeatedly recognized the importance of this concept. Cf. *In re Code of Jud. Conduct* (Canons 1, 2, and 7(1)(B), 603 So. 2d 494, 497 (Fla. 1992) ("Maintaining the impartiality, the independence from political influence, and the public image of the judiciary as impartial and independent is a compelling governmental interest.") (*citing Morial v. Jud. Comm'n*, 565 F.2d 295 (5th Cir.1977), cert. denied, 435 U.S. 1013 (1978)) (as discussed below, the least restrictive alternative requirement would also be met.).

The voters of Florida decided that the use of party labels in nonpartisan elections was inappropriate.  Clearly, Floridians wanted nonpartisan elections to be determined based on ideas, rather than party labels.  Florida voters changed their Constitution to make school board elections nonpartisan.  The clear goals were: (1) Floridians determined that the nonpartisan *elections* (not the candidates, nor the officeholders), shall be free of political party labels (not, as Plaintiff suggests that Florida should have done, or might have done, being free from bias, or political influence); (2) that permitting candidates to advertise and campaign on party affiliation in a nonpartisan election causes confusion to voters who will naturally wonder why a candidate is running as a Republican (or other party affiliation), in a nonpartisan election, and then wonder, and perhaps assume, that the candidate is

the Republican nominee, despite the election being nonpartisan; and (3) the statute

will minimize the impact of politics on the education of Florida's children.

"There can be no question about the legitimacy of the State's interest in fostering

informed and educated expressions of the popular will in a general election."

*Anderson v. Celebrezze*, 460 U.S. 780, 796 (1983).   Protecting voters from

confusion and undue influence is a legitimate State interest.   *Eu v. San Francisco*

*Cty. Democratic Cent. Comm*., 489 U.S. 214, 228 (1989).

The statute at issue here "does not prohibit a political advertisement from

stating the candidate's partisan-related experience." § 106.143(3).  Nor does the

statute restrict Plaintiff's speech as to any issue, or any political opinion that he has

or endorses, or how he intends to vote on school board issues.  These facts make

the Florida law different in kind from all of the statutes subjected to strict scrutiny

in cases cited by Plaintiff.  Florida's law merely restricts Plaintiff's ability to

advertise or campaign in the nonpartisan schoolboard election "based on party

affiliation." *Id*. As the Supreme Court has held in interpreting similar regulations,

Plaintiff "retains great latitude in [his] ability to communicate ideas to voters[.]"

*Timmons*, 520 U.S. at 363.  Plaintiff has failed to identify any substance that he

wishes to communicate to voters which is prohibited by Section 106.143(3).

Instead, he wishes to advertise that he is a lifelong Republican, so that voters will

identify him as a current Republican in considering how to cast their ballots.  See

Ex. B,, Pltf.'s Resp. to FEC Defs.' Interrog. Nos. 5 & 8.

The record is replete with coherent, concise examples of the message that

Plaintiff contends he wishes to convey with the phrase "lifelong Republican." See

Ex. B., Pltf.'s Resp. to FEC Defs.' Interrog.; No. 5 (concisely explaining that the

message he wished to convey to voters was one of "fiscal responsibilities and

personal freedoms and the need to hold individuals . . . accountable for the failures

of one of the worst school districts in the state."); and No. 8 (explaining that

Plaintiff "firmly endorsed" "the President's  America-first agenda.").  However,

Plaintiff has no basis to assert that any voter would understand Plaintiff to support

these goals from Plaintiff merely uttering "lifelong Republican."  Thus, it is clear

that the statute satisfies the compelling interest requirement under strict scrutiny,

and Plaintiff has failed to present any credible and admissible evidence showing

otherwise.

If Plaintiff may put out political advertisements that state that he is a lifelong

Republican, then the will of Florida's citizens will be thwarted.  Advertising that

fact is the same as advertising party affiliation.  Such a statement in his

advertisement would threaten to become the basis for voters' selections, and

indeed Plaintiff intends his "lifelong Republican" statement to influence voters to

choose him over other candidates.  His interrogatory responses demonstrate that

his intention was precisely to garner votes based solely on his party affiliation – the one effect that the challenged statute is intended to prevent.  See Ex. B, Pltf.'s Resp. to FEC Defs.' Interrog. No. 2 ("party affiliation as a shortcut in deciding how to vote," voters can "offset ignorance" by voting for party affiliation, voters can "infer a great deal" from party affiliation, voters "use parties to guide voting decisions," which is useful to "rationally ignorant" voters); See Ex. B, Pltf.'s Resp. to FEC Defs.' Interrog. No. 4 (party affiliation is a "powerful shorthand" for voters, and some voters would have voted for Plaintiff had they known his party affiliation.)

### ii.    Section 106.143(3) is Narrowly Tailored

The challenged statute is not overly broad or under-inclusive.  It contains a very limited and narrow restriction on speech.  The restriction is only broad enough to achieve the goals of Florida's voters, and does not encompass more than the speech that fits Florida's compelling interest.

Plaintiff is only restricted in advertising or campaigning based upon his party affiliation.  He cannot advertise by stating "Although this is a nonpartisan election, I'm a Republican so vote for me on that basis."  The challenged statute places no limits other than "party affiliation" on Plaintiff's speech to prospective voters, and even then the limitation is only on "advertising" party affiliation or

"campaigning based on" party affiliation, as stated in both § 106.143(3) and § 97.021(23), Fla. Stat.

Plaintiff may speak on any subject or and convey any intention he has regarding carrying out his office if he is elected.  Contrary to his Motion, the statute does not prohibit the broad scope of speech that Plaintiff asserts. It does not prohibit Plaintiff from describing his history: "This section does not prohibit a political advertisement from stating the candidate's partisan-related experience." Section 106.143(3), Florida Statutes.  Rather, it merely prevents candidates from conveying their current partisanship in the election process.  It does not prohibit Plaintiff answering a question at the grocery store, or elsewhere, as to his party membership, despite Plaintiff's assertion otherwise.[6]  (DE #67-1 at 20)  The statute's words are limited to advertising party affiliation and campaigning based on party affiliation.  This is not the multi-layer bar to speech that Plaintiff argues it is, as being "prophylaxis-upon-prophylaxis..." Id.  Nor is this straightforward statute a set of "second, third, and even fourth fences…" around the law.  (DE #67-1 at 22)

There is no lesser means available to satisfy the government's compelling interest in making these elections nonpartisan.   If a candidate may freely advertise

---

[6] Plaintiff was vague regarding his examples that included a greeting of "hello" at a grocery store.  Defendants assume that he intended a scenario similar to what Defendants address here.

that he is a lifelong Republican, he is effectively advertising that he is running as a Republican candidate.  This would turn a nonpartisan election into a partisan one.

As shown, the challenged statute is not overinclusive.  Nor is it underinclusive. While an underinclusive statute can cast doubt on the purpose of the statute, *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002), the narrow breadth of Section 106143(3) clearly reinforces its purpose.  In contrast, *White* dealt with a statute providing that a "candidate for a judicial office, including an incumbent judge," shall not "announce his or her views on disputed legal or political issues., *id*. at 768, but the restriction was held to be underinclusive because it did not extend past the election.  A restriction on announcing views on disputed issues would logically carry over past the election, for judges.  On the other hand, Florida's statute pertains only to the party label during the election process to avoid voter confusion, and remain consistent with Florida's Constitution and other related statutes discussed herein.  Once the person is elected to a school board position, there is no further need to ensure that the *election process* is nonpartisan.

Further, since a nonpartisan election is constitutionally acceptable, then it must be acceptable for the State to define the term "nonpartisan."  Plaintiff does not attack the statute that defines nonpartisan, and so implicitly accepts it.  The Florida definition of a nonpartisan election limits use of party affiliation.

The voters of Florida decided that the use of party labels in nonpartisan elections was inappropriate.  Clearly, Floridians wanted nonpartisan elections to be determined based on ideas, rather than party labels.  The goals, as stated above are all legitimate purposes.  Through their elected legislators, Floridians passed a statute to define what a nonpartisan election means, the applicability to school board elections, and the scope of the limitations for nonpartisan elections.  The statute thus prevents voter confusion and misinformation by seeing the *non sequitur* of candidates advertising and campaigning on their party affiliation in nonpartisan races.  This Court should not lightly dismiss Floridians' concerns and choices.

## II.    Plaintiff Makes Many Incorrect Assertions Regarding Florida Law

Throughout Plaintiff's motion he argues a wide variety of incorrect intentions of Floridians in voting for the Constitutional amendment and in passing the laws that relate to this case.  At the same time, he ignores the basis that Defendants have asserted, that (1) Floridians determined that the nonpartisan *elections* (not the candidates, nor the officeholders), shall be free of political party labels (not free from bias, or political influence); (2) that permitting candidates to advertise and campaign on party affiliation in a nonpartisan election causes confusion to voters who will naturally wonder why a candidate is running as a

Republican (or other party affiliation), in a nonpartisan election, and then wonder, and perhaps assume, that the candidate is the Republican nominee, despite the election being nonpartisan; and (3) the statute will minimize the impact of politics on the education of Florida's children.

For each of Plaintiff's arguments that assumes a goal other than what Defendants have asserted, his argument is irrelevant and inappropriate as miscasting Defendants' position and then arguing the faults of that miscast position. "States adopt laws to address the problems that confront them. The First Amendment does not require States to regulate for problems that do not exist." *Burson v. Freeman*, 504 U.S. 191, 207 (1992).

A.      Plaintiff incorrectly argues that Florida "seeks to restrict directly the offer of ideas by a candidate to the voters." (DE #67-1 at 10)  This is not the case. Plaintiff is not restricted from expressing any idea.  Plaintiff's cite to *Brown v. Hartlage*, 456 U.S. 45, 53 (1982), is misplaced.  That case dealt with an attempt to void an election because the winning candidate had stated that he would take a salary less than the amount fixed in law.  The statement regarding the salary may have violated state law by a corrupt promise to voters.  The Court's analysis largely related to whether the candidate actually violated the state law.  In it's discussion, the Court also stated that "a State has a legitimate interest in upholding the integrity of the electoral process itself." *Id*., at 52.  *Brown* is distinguishable, in

that Brown's message to voters expressed his intent and an idea.  Instead of

expressing an intent or an idea, Hetherington wants to use a label, and wants to use

the one label that would thwart the will of the Florida voters.

B.     Plaintiff overstates his case by asserting that "Florida here prohibits

any speech by a nonpartisan candidate mentioning his or her partisan affiliation."

(DE #67-1 at 13) (Also "Florida's restriction curtails all speech that mentions

partisan affiliation…" (DE #67-1 at 20); and "cutting off all communication about

partisan affiliation…" (DE #67-1 at 28))   As Plaintiff surely understands, the

statute specifically permits a political advertisement to state his "partisan-related

experience."  See § 106.143(3), Fla. Stat.  And, Plaintiff argues the reverse, *i.e.* that

the ability of Plaintiff to state his party experience "all but declare[s] that [he] is a

Republican…"  (DE #67-1 at 16)  In Plaintiff's words, the *statements that the*

*statute permits* are "proxies to inform the electorate of a candidate's political party

affiliation."  *Id*.

C.     Similarly, Plaintiff overstates his case by asserting that Florida limits

the quantity of speech.  (DE #67-1 at 14)  There is no such limit, and he cites to no

such limit.

D.     Plaintiff proposes, without explanation, that Floridians might have

determined that party membership was "dangerous."  (DE #67-1 at 16)  He

misconstrues the statute.  The statute is concerned with advertising and

campaigning with party labels. Nothing in the statute suggests that Floridians feel that party membership is "dangerous." They want the nonpartisan election to be free of party labels.

E.     Plaintiff added to the above that what Florida should have done "to ensure that elections *and offices* were nonpartisan," was to prohibit candidates from being members of political parties. *Id*. The statutes do not state that *the offices* should be nonpartisan; but it is clear that elected candidates are expected to govern based on their own values.

F.     Plaintiff also suggested that Floridians must be concerned over party influence over the candidates. (Mot. 16-17) Again, party influence is not what the law, or Defendants stated as a basis. Therefore, Plaintiff's reliance for this point on *Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010), is misplaced.

G.     Plaintiff again misconstrues the statute as pertaining to "the nonpartisan nature of elections *and offices*" regarding his suggestion that "[i]t is far more destructive to voter confidence in the election system to make voters believe that they are electing *nonpartisan individuals* to office…" (DE #67-1 at 17-18) The statute and Defendants have not proposed that the *individual* must abandon his own beliefs that align with a party's position either during the election or in office - only that candidates don't use party affiliation in advertising and basing their campaigning on party affiliation.

H.      Similarly, neither the statute nor Defendants have stated that the underlying purpose of the statute is to "assure open-mindedness," of officeholders as Plaintiff proposes.  (DE #67-1 at 18-19).

I.      Plaintiff repeats his assertion that Floridians might have a concern that the *offices* should be nonpartisan.  (DE #67-1 at 19)   Plaintiff proposes that candidates should be allowed to advertise or campaign on party labels as long as candidates don't go so far as to outright claim that they are "the" nominee of the party.  Plaintiff does not explain how his approach would still suit the needs of Floridians, and it would not satisfy the needs of Floridians.

J.      Plaintiff proposes that a candidate cannot even mention his party affiliation when "saying hello at the supermarket."  (DE #67-1 at 20)  The statute does not prohibit this, especially if the candidate is asked by the voter, unless the candidate is engaged in advertising or is campaigning based on party affiliation.

K.      Plaintiff continuously recasts the Florida statute to mean something different from its words, and then argue based on the false meaning.  He argues that the statue is not narrowly tailored to mean the goal of "maintaining nonpartisan *offices*."  (DE #67-1 at 21)   That is not the goal.  But Plaintiff then proposes the unworkable (and probably harder to defend against a constitutionality challenge), solution to the goal that he invented, suggesting that Florida forbid office*holders* from being party members.  *Id*.

L.     Plaintiff proposes, apparently as the only other possible goal to the above, that Floridians want candidates to *be* nonpartisan.  *Id*.   He suggests that this could be accomplished by avoiding the statements of being "the party representative."  Since Plaintiff ignores the stated goals, his solution is irrelevant.

M.     In similar fashion, Plaintiff uses a court's definition for the meaning of a nonpartisan election. (DE #67-1 at 21-22)  Respectfully, Florida's Legislature has defined it differently, as is their right.

N.     Plaintiff's resort to suggesting recusal misses the mark entirely.  (DE #67-1 at 22-23)  First, "recusal" would be unworkable in a school board setting.  Unlike judges, the issues before school boards are not likely to be clear regarding their genesis.  Moreover, again, Plaintiff focusses on the officeholder, rather than the candidate, and the election.

O.     Plaintiff proposes that Floridians were concerned about the risk of bias by advertising or campaigning on party affiliation.  (DE #67-1 at 24-25) That was not a stated concern.

## III.   Plaintiff's Unsupported Allegations and Legally Insufficient Evidence Are Insufficient to Support Plaintiff's Motion For Summary Judgment

Plaintiff's Motion contains myriad bald allegations which find no support in the record nor in any cited legal authority. The following unsupported allegations

provide no evidentiary or legal basis for this Court to enter summary judgment in

favor of Plaintiff:

- "If party membership were truly dangerous, and if the state in fact wanted to ensure that elections and offices were nonpartisan, then it would prohibit candidates from being members of parties. Instead, it just wants candidates to hide their membership from the voters." (DE #67-1 at 16-17);

- "If protecting the nonpartisan nature of elections *and offices* were indeed an interest of the highest order, the prohibition on party affiliation would extend beyond the campaign." (DE #67-1 at 17)(emphasis added);

- "It is far more destructive to voter confidence in the election system to make voters believe think [sic] that they are electing nonpartisan individuals to office, only to shatter their beliefs once the election has passed." (DE #67-1 at 17-18);

- "Florida fails to preserve confidence in and thus the integrity of nonpartisan elections and offices." (DE #67-1 at 19);

- "If the government's interest were one in maintaining nonpartisan offices, or in avoiding confusion about such nonpartisanship, then the least restrictive means of securing those interests would be to forbid *officeholders* [rather than candidates] from being party members, or at least from announcing their party membership." (DE #67-1 at 21) (emphasis original);

- "…if the state only had an interest in pretending that candidates were nonpartisan, then the least restrictive means to secure that interest would be to forbid candidates from stating that they are party representatives for office." (DE #67-1 at 21);

- "In Mr. Hetherington's situation, the risk related to bias is also much less a concern—because he seeks a position where he is expected to take positions and be responsive to constituents."[7] (DE #67-1 at 25).

Plaintiff also argues that the statute supposedly silenced "many candidates" who would "abstain from protected speech." (*See generally* DE #67-1 at 25-30.) Although Plaintiff cites multiple unauthenticated sources which Plaintiff contends establish the number of nonpartisan elections held in Florida, Plaintiff presented *no evidence* that any candidates for such nonpartisan offices censored their speech due to Section 106.143(3). The Court should disregard and cannot rely upon Plaintiff's unsupported allegations as a basis for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A).

## CONCLUSION

For all the foregoing reasons, Plaintiff has presented no issue of law on which he is entitled to summary judgment, and he has failed to establish that the undisputed facts entitle him to summary judgment. Accordingly, this Court should enter an order denying Plaintiff's Motion For Summary Judgment, and granting such other and further relief as this Court deems equitable and just.

---

[7] Plaintiff cites to *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 446 (2015) for this proposition, however the citation does not support the statement. Rather, that case upheld restrictions on political speech in the context of nonpartisan judicial elections where the restrictions furthered the state's compelling interests. Moreover, there is likely no elected position in the Untied States where the officeholder is *not* expected to take positions and be responsive to constituents. Therefore, Plaintiff's statement is meaningless in the context of this case.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL OF FLORIDA**

*/s/ Glen A. Bassett*
Glen A. Bassett (FBN 615676)
Special Counsel
Complex Litigation
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
850-414-3300
Glen.Bassett@myfloridalegal.com
ComplexLitigation.eservice@myfloridalegal
.com
For Defendants Poitier, Stern, Smith, Allen,
and Hayes

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I HEREBY CERTIFY that the foregoing response contains 6106 words, and is thus within the limitation of the Local Rules of this Court.

*/s/ Glen A. Bassett*
Glen A. Bassett
Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of January 2022, I electronically filed a true and correct copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will serve all attorneys of record.

*/s/ Glen A. Bassett*
Glen A. Bassett
Attorney