## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**KELLS HETHERINGTON,**

     **Plaintiff,**

**v.**                            **CASE NO. 3:21cv671-MCR-ZCB**

**GINGER BOWDEN MADDEN,**
**in her official capacity as State Attorney**
**for the First Judicial Circuit in and for**
**Escambia County, et al.,**

     **Defendants.**

_____/

## <u>ORDER</u>

     Plaintiff Kells Hetherington, a candidate for the nonpartisan office of school board member in the 2018 and 2022 elections, brought this suit pursuant to 42 U.S.C. § 1983, asserting that his First Amendment political speech rights are violated by Florida's law prohibiting candidates for nonpartisan office from advertising or campaigning based on party affiliation. *See* Fla. Stat. § 106.143(3). By prior Order, the Court granted a preliminary injunction against Defendants Ginger Bowden Madden, State Attorney for the First Judicial Circuit in and for Escambia County ("the State Attorney), and the Vice Chair of the Florida Elections Commission ("FEC"), Joni Alexis Poitier, together with various FEC members in their official

capacities[1] (the "FEC Defendants"), precluding further enforcement of the statute during the pendency of this case, ECF No. 51.  *See Hetherington v. Madden*, 558 F. Supp. 3d 1187, 1193 (N.D. Fla. 2021).  Now pending are the parties' cross motions for summary judgment on the merits of whether the statute, Fla. Stat. § 106.143(3), impermissibly restricts core political speech during an election campaign in violation of the First Amendment.  ECF Nos. 67, 68, 69.  Additionally, the FEC Defendants filed a Motion to Strike Portions of Plaintiff's Motion for Summary Judgment, ECF No. 76, and Hetherington moved, in the alternative, to amend the Complaint to the extent that is deemed necessary to provide him full redress, ECF No. 74.  Having fully considered the matter, the Court concludes that Hetherington is entitled to declaratory and injunctive relief; the motion to strike is due to be denied in part and granted in part; and the motion to amend is moot.[2]

---

[1] FEC members named are Barbra Stern, Kymberlee Curry Smith, Jason Todd Allen, and J. Martin Hayes.  The Court by a previous order concluded that the FEC Defendants are entitled to qualified immunity on claims against them in their individual capacities, ECF No. 57.  *See Hetherington v. Madden*, No. 3:21-cv-671-MCR-EMT, 2021 WL 4958094, at *3 (N.D. Fla. Aug. 17, 2021).  Heatherington also sued the Florida Secretary of State and Attorney General, whom the Court previously dismissed on grounds that Heatherington lacked standing to sue them, ECF No. 50.  *See Hetherington v. Lee*, No. 3:21-cv-671-MCR-EMT, 2021 WL 6882441, at *4 (N.D. Fla. July 12, 2021).

[2] Through an administrative error, the pending motions were overlooked and consequently, have not been promptly adjudicated.  The Court greatly regrets this oversight and extends apologies to the parties for the delay and any inconvenience this may have caused.

## I.   Background

### A.   Florida's Law on Nonpartisan School Board Elections

In Florida, elections are regulated through the Florida Election Code (the "Code"), which encompasses Florida Statutes, Chapters 97—106.   The Code "generally contemplates partisan elections," in which political parties nominate candidates who are then selected for the general election ballot through a primary election.   *See Orange Cnty. v. Singh*, 268 So. 3d 668, 671 (Fla. 2019).   However, certain offices—including the office of school board member—must be elected through nonpartisan elections, *see id.* at 672, which are regulated under Chapter 105 of the Code.[3]   In particular, Chapter 105 establishes the qualification process for nonpartisan candidates (which is free from party nominations) and defines the form of the ballot (which requires nonpartisan offices to appear on a separate portion of the general election ballot, requires listing of candidates for each nonpartisan office in alphabetical order, allows write-in candidates, and prohibits any reference to political party affiliation on the ballot with respect to any nonpartisan office or

---

[3] The Florida Constitution and general law regarding school district governance require "a nonpartisan election" for school board members.  Fla. Const. art. IX § 4(a) ("In each school district there shall be a school board composed of five or more members chosen by vote of the electors in a nonpartisan election for appropriately staggered terms of four years, as provided by law."); Fla. Stat. § 1001.361 (requiring "a nonpartisan election as provided in chapter 105" for school board members).

candidate), among other things.[4]   *See e.g.,* Fla. Stat. §§ 105.031 (nonpartisan

qualifications); 105.041 (nonpartisan form of ballot).

Chapter 106 of the Code focuses on campaign financing and communications

during campaigns.  The provision at issue in this case is Fla. Stat. § 106.143(3),

which deals with political advertisements[5] and states in full:

> Any political advertisement of a candidate running for partisan office
> shall express the name of the political party of which the candidate is
> seeking nomination or is the nominee. If the candidate for partisan
> office is running as a candidate with no party affiliation, any political
> advertisement of the candidate must state that the candidate has no party
> affiliation. **A political advertisement of a candidate running for
> nonpartisan office may not state the candidate's political party
> affiliation. This section does not prohibit a political advertisement
> from stating the candidate's partisan-related experience. A
> candidate for nonpartisan office is prohibited from campaigning
> based on party affiliation.**

Fla. Stat. § 106.143(3) (emphasis added to highlight the portion challenged).  The

Code defines "nonpartisan office" as "an office for which a candidate is prohibited

from campaigning or qualifying for election or retention in office based on party

---

[4] Chapter 105 also specifically defines the term "judicial office" as "a nonpartisan office" and prohibits a candidate for judicial office from "campaigning or qualifying for such an office based on party affiliation," Fla. Stat. § 105.011(2); and limits the political activity of candidates for judicial office, *see* Fla. Stat. § 105.071.  These provisions are not challenged in this suit.

[5] The Code defines a "[p]olitical advertisement" as "a paid expression in a communications medium . . . or by means other than the spoken word in direct conversation, which expressly advocates the election or defeat of a candidate or the approval or rejection of an issue."  Fla. Stat. § 106.011(15).

affiliation." Fla. Stat. § 97.021(23).  Nothing in the definition requires a candidate for school board member to discontinue his or her membership with a political party,[6] and the term "campaigning" is not specially defined.

The Florida Division of Elections ("Division") provides advisory opinions on the Code, which the FEC must follow.[7]  As relevant here, the Division has advised candidates for nonpartisan office that based on § 106.143(3), they "may not publicly represent or advertise [themselves] as . . . member[s] of any political party" but may "list partisan related experience such as 'executive committee of _____ party' in campaign advertisements."  ECF No. 67–3 at 2 (Fla. Div. of Elections, Advisory Opinion DE 2003-02 (Feb. 21, 2003)).  Also, when asked for an opinion regarding whether an elected nonpartisan officeholder or a candidate could post his or her party affiliation on a personal Facebook page, the Division noted that the Code's definition of nonpartisan office includes a prohibition on campaigning based on party affiliation but does not define "campaigning."  The Division thus looked to *Black's Law Dictionary* for the ordinary meaning, which broadly includes "all acts done to bring about a candidate's election."  ECF No. 67–4 at 2 (Fla. Div. of

---

[6] The nonpartisan qualification process for school board member is described in Fla. Stat. § 105.035.

[7] The FEC "may not issue advisory opinions and must, in all its deliberations and decisions, adhere to statutory law and advisory opinions of the [D]ivision."  Fla. Stat. § 106.26(13).

Elections, Advisory Opinion DE 2010-02 at 2 (Mar. 3, 2010)).  Consistent with that

broad definition, the Division concluded that the Code prohibits "doing any act to

bring about the candidate's election *based upon party affiliation*," and advised that

this precludes  "campaigning for a nonpartisan office based upon party affiliation on

an Internet social networking site," even if the posting is not a paid political

advertisement.  *Id.* at 2 & n.2 (emphasis in original).  The Division explained that

this restriction only applies to "candidates" for nonpartisan office, and once elected,

nonpartisan officeholders "are not prohibited from publicly representing their party

affiliation unless and until they again become a 'candidate' at which point they are

precluded from campaigning based upon party affiliation."  *Id.* at 2.

### B.     Facts

The undisputed record reflects that in 2018, Hetherington ran for a

nonpartisan seat on the Escambia County School Board.  During his campaign,

Hetherington, while aware of Fla. Stat. § 106.143(3), described himself as a

"lifelong Republican" in a candidate statement published on the Escambia County

Supervisor of Elections' website.  In May 2018, the FEC initiated an investigation

after receiving a complaint that Hetherington's candidate statement violated Florida

law with respect to nonpartisan campaigns.  *See* ECF No. 68–2 (Michelle Salzman

complaint).  In particular, Salzman complained, among other things, that

Hetherington's candidate statement identifying himself as a "lifelong Republican" (which was published on the website of the Supervisor of Elections) violated Florida's nonpartisan elections law. *See id.* On May 1, 2019, the FEC issued a Report of Investigation, and on July 11, 2019, a Staff Recommendation, which the FEC adopted, found probable cause to charge Hetherington with one count of violating Fla. Stat. § 106.143(3), "when he campaigned based on party affiliation" in a nonpartisan election. *See* ECF Nos. 68–3, 68–4, 68–5.

On November 19, 2019, following an informal hearing, the FEC entered a final order, finding Hetherington's candidate statement a willful violation of § 106.143(3), and imposing a $500 civil fine, which, on reconsideration, the FEC later reduced to $200. ECF Nos. 67–5, 68–6. Hetherington paid the fine, and on March 30, 2021, established his candidacy for the 2022 Escambia County School Board election.

Hetherington filed suit on April 15, 2021, challenging the constitutionality of § 106.143(3)'s ban on nonpartisan candidates stating a party affiliation, contending the statute is an impermissible restraint on his core First Amendment free speech rights and also that the threat of continued enforcement chills his free speech in the current and future elections. *See* 42 U.S.C. § 1983; ECF No. 1. Hetherington moved for a preliminary injunction, and in support, he stated by declaration that he again

intended to state his party affiliation as a lifelong Republican during his current and future campaigns and share his candidate statement on social media, in mailings, and other campaign literature.  Hetherington further stated that this speech is important to him because his party affiliation gives voters an overview and representation of his values in situations where he does not have the time or opportunity to share every aspect of his platform.  He stated that as of the date of his declaration, April 22, 2021, he was refraining from sharing his party affiliation out of fear that he would again face investigation, hearings, and fines for violating Fla. Stat. § 106.143(3).

In prior orders, the Court determined that Hetherington has standing to bring this pre-enforcement suit against the State Attorney and the FEC, ECF No. 50, *see Hetherington v. Lee*, No. 3:21-CV-671-MCR-EMT, 2021 WL 6882441, at *4 (N.D. Fla. July 12, 2021), and granted a preliminary injunction against further enforcement of the statute in July 2021, ECF No. 51.  *See Hetherington v. Madden*, 558 F. Supp. 3d 1187, 1193 (N.D. Fla. 2021).  Following entry of the preliminary injunction, the parties engaged in a period of discovery, after which they agreed the case should proceed to summary judgment rather than an evidentiary hearing.  The merits of the dispute are now before the Court on the parties' cross motions for summary judgment.

## II.   Discussion

### A.   Motion to Strike

Before addressing the merits, the Court considers the FEC Defendants'
Motion to Strike Portions of Hetherington's Motion for Summary Judgment.   In
particular, they move to strike a declaration submitted by Hetherington's attorney
and the attached exhibits (except for Hetherington's declaration, which is not
challenged), and Hetherington's citations to hearsay found on internet sites—
namely, Ballotpedia and the Florida School Board Association.   The motion is
granted in part and denied in part.

Affidavits used to support or oppose summary judgment "must be made on
personal knowledge, set out facts that would be admissible in evidence, and show
that the declarant is competent to testify on the matters stated."   Fed. R. Civ. P.
56(c)(4).   Hetherington's attorney's declaration merely attests that the documents
attached to the summary judgment motion (Division's advisory opinions, a Final
Administrative Order, other filings within Hetherington's FEC case file, and
campaign forms) are true and correct copies, ECF No. 67–2.   The FEC Defendants
argue this declaration and the attached exhibits should be stricken because the
attorney lacks personal knowledge of underlying facts as well as the ability to
authenticate the documents as a fact witness.   But Hetherington's attorney did not

CASE NO. 3:21cv671-MCR-ZCB

attest to the underlying facts.   Instead, he represents only that the attached documents, many of which were received from the FEC Defendants in discovery, are true and accurate copies.   Hetherington argues that this type of affidavit is common pretrial practice.   The Court agrees with Hetherington that an attorney declaration to this effect is not precluded in this summary judgment context and is a matter of common pretrial practice.   *See Estes Express Lines v. Macy's Corp. Servs.*, No. 08–cv–3582 (PGS), 2010 WL 398749, at *5 (D.N.J. Jan. 28, 2010) ("Plaintiff ignores the reality that filing documents [pretrial] pursuant to attorney declaration is a well established practice."), *cited in Turbyfill v. Scottsdale Ind. Co.*, 3:14cv283-RV-EMT (N.D. Fla. Feb. 24, 2016).   Additionally, most of the documents attached were in the FEC file or are available publicly on official state websites, something the Court may take judicial notice of.   *See, e.g., Gent v. CUNA Mutual Ins. Society*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (courts may take judicial notice of information available on official government website); *7020 Ent., LLC v. Miami-Dade Cnty.*, 519 F. Supp. 3d 1094, 1098 (S.D. Fla. 2021) (taking judicial notice of executive orders available from official government websites); *FAS Capital, LLC v. Carr*, 7 F. Supp. 3d 1259, 1266-67 (N.D. Ga. 2014) (noting courts may take judicial notice of documents appearing on an official government website).   Also, and importantly, the FEC Defendants do not dispute the substance or accuracy of any particular

exhibit or suggest that there exists any redundant or scandalous matter in the affidavit or exhibits.  *See*  Fed. R. Civ. P. 12(f) ("The court may strike . . . any redundant, immaterial, impertinent, or scandalous matter . . . .").  The motion to strike the attorney's declaration and attached evidence is denied.

Regarding information sourced from other websites that appear within Hetherington's brief as facts, namely, statistics from "Ballotpedia," ECF No. 67–1 (Brief at pp. 28–29), and "the Florida School Board Association," *id.* (Brief at p. 27), the motion to strike is construed as an objection and the objection is sustained. "[F]acts set out in law review articles and informal websites (as opposed to official government websites) are similar to facts set out in newspapers[,] [and] [a]s such, they are inadmissible hearsay not subject, without more, to any exception, including judicial notice." *Smith v. Vestavia Hills Bd. of Educ.,* No. 2:16-cv-842-VEH2018, WL 1408537, at *7 (N.D. Ala. 2018); *see also Thompson v. Merrill*, 505 F. Supp. 3d 1239, 1262 (M.D. Ala. 2020) (same).  The Court concludes that the statistics Hetherington cites from non-governmental websites constitute unsubstantiated hearsay and will not be considered.

**B.     Motions for Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004); *see also Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (stating a fact is not material unless "it would affect the outcome of the suit under the governing law").  A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323.  In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).  Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts" are matters left to a jury.  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  The Court evaluates cross-motions for summary judgment using the same standards, considering each motion individually and resolving all reasonable factual inferences in favor of the

nonmovant.  *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

### 1.   Standing as to the State Attorney

The State Attorney first moves for summary judgment on standing grounds, arguing there is no *prima facie* case against her because she has not taken any enforcement steps against Hetherington for violating  Fla. Stat. § 106.143(3).  She also argues the State Attorney lacks enforcement power because the statute imposes no criminal penalties and only the FEC has authority to enforce the civil penalty designated for violation of the statute.  As a result, the State Attorney argues, Hetherington's fear of state prosecution is speculative, and the State Attorney is not a proper party to this action.

The Court previously rejected the State Attorney's argument that Hetherington lacks standing and that the State Attorney lacks enforcement power over violations of § 106.143(3), and finds no grounds for revisiting, reconsidering, or altering that decision.  ECF No. 50.  *See Hetherington v. Lee*, No. 3:21-cv-671-MCR-EMT, 2021 WL 6882441, at *4 (N.D. Fla. July 12, 2021) (concluding there was a "realistic danger" of enforcement by the State Attorney and that "standing to sue the State Attorney is not defeated merely because the alleged injury can be fairly traced to the actions of both the FEC and the State Attorney") (internal quotations

omitted).    Despite the fact that the State Attorney took no investigative or enforcement action against Hetherington with respect to his 2018 campaign statements, the Code states that the FEC's enforcement authority does not "limit[] the jurisdiction of any other officers or agencies empowered by law to investigate, act upon, or dispose of alleged violations of this [C]ode," Fla. Stat. § 106.25(1), and on receiving a complaint referred by the FEC, the State Attorney has a "duty . . . to investigate promptly and thoroughly" and to undertake any civil or criminal action that is justified.  Fla. Stat. § 106.25(6).  Thus, consistent with the Court's prior order, incorporated here by reference, the Court concludes that in this pre-enforcement context, Hetherington has sufficiently established a credible threat of investigation or enforcement traceable to the State Attorney and thus has standing to pursue a permanent injunction against the State Attorney.  *See Hetherington*, 2021 WL 6882441, at *4.

## 2.    First Amendment Challenge

Hetherington challenges Fla. Stat. § 106.143(3) as facially unconstitutional and unconstitutional as applied to his statement that he is a "lifelong Republican" within his nonpartisan campaign for school board member.  "A plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the [statute] would be valid,' *i.e.*, that the law is unconstitutional in all

of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *see also Bischoff v. Fla.*, 242 F. Supp. 2d 1226, 1245 (M.D. Fla. 2003) ("If a facial challenge is successful, the court will strike down the invalid statute."). "In the First Amendment context, the overbreadth doctrine allows a party to challenge a law on its face because it also threatens others not before the court— those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1370 (11th Cir. 2021).

The First Amendment to the United States Constitution declares that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I; *see also Weaver v. Bonner,* 309 F.3d 1312, 1318 (11th Cir. 2002) (noting the First Amendment's prohibition of laws abridging speech applies to the states through the Fourteenth Amendment). "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Otto v. City of Boca Raton, Fla*., 981 F.3d 854, 862 (11th Cir. 2020) (quoting *Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). For this reason, all content-based restrictions—that is, "those that target

speech based on its communicative content"—are deemed presumptively unconstitutional" and subject to strict scrutiny. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). To survive this exacting standard, the government must prove that "the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United*, 558 U.S. at 340 (quoting *Fed. Elec. Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)). The bar is high, and "'it is the rare case' in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015);[8] *see also Otto*, 981 F.3d at 862 (noting, "[l]aws or regulations almost never survive this demanding test").

The first inquiry on a facial challenge is to determine whether the restriction is aimed at the content of the speech. "A content-based law is one that 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *Id.* (quoting *Reed*, 576 U.S. at 163). Also, a government's restriction on "core

---

[8] In *Williams-Yulee*, a majority of the Court concluded that a Florida law prohibiting a judicial candidate's personal solicitation of funds (as stated in Judicial Canon 7(C)) was the rare case where a speech restriction was justified by the State's compelling need to protect the integrity of the judiciary. The majority agreed that precedent related to First Amendment issues in political elections "have little bearing on the issues" involved in a judicial campaign because the role of judges, who must decide cases based on fairness and independence, differs from the role of politicians, who may decide issues based on the preferences of their supporters. *See Williams-Yulee*, 575 U.S. at 447; *see also id.* at 458 (Ginsberg, J., concurring, joined by Breyer, J.) (expressly noting their agreement on this point).

political speech" in a campaign is content-based and subject to strict scrutiny.

*Weaver*, 309 F.3d at 1319.  Campaign speech "occupies the core of the protection

afforded by the First Amendment."  *Weaver*, 309 F.3d at 1319 (quoting *McIntyre v.*

*Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995)); *see also Burdine v. Freeman*,

504 U.S. 191, 196 (1992) ("Whatever differences may exist about interpretations of

the First Amendment, there is practically universal agreement that a major purpose

of that Amendment was to protect the free discussion of governmental affairs.")

(quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).  Because speech provides the

means to hold officials accountable to the people, it is "an essential mechanism of

democracy," and the First Amendment therefore "'has its fullest and most urgent

application' to speech uttered during a campaign for political office."  *Citizens*

*United v. Fed. Election Comm'n,* 558 U.S. 310, 339 (2010) (quoting *Eu v. San*

*Francisco Cnty. Democratic Cent. Comm.,* 489 U.S. 214, 223 (1989)); *see also*

*Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976) ("In a republic where the people are

sovereign, the ability of the citizenry to make informed choices among candidates

for office is essential, for the identities of those who are elected will inevitably shape

the course that we follow as a nation.").

Hetherington argues that Fla. Stat. § 106.143(3) is a content-based restriction,

aimed at core political speech about party affiliation and thus subject to strict

CASE NO. 3:21cv671-MCR-ZCB

scrutiny. The State Attorney and the FEC Defendants argue that § 106.143(3) imposes only a minimal restriction on speech, banning the mere use of a party "label" and therefore, the restriction should be scrutinized according to the intermediate sliding-scale scrutiny of *Anderson/Burdick*, under which a non-severe First Amendment burden may be justified by the state's broad regulatory power over the time, place, and manner of elections, according to U.S. Const. art. I § 4, cl.1. *See Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992) (applying a deferential standard because "important regulatory interests" related to voting procedures necessarily may impose non-severe, nondiscriminatory restrictions on the right to vote or right to associate that are justified); *Anderson v. Celebrezze*, 460 U.S. 780, 778–79 (1983) (recognizing that "there must be a substantial regulation of elections if they are to be fair and honest," and applying a less rigorous standard to justify imposing filing deadlines for candidate eligibility). The Court disagrees.

Hetherington rightly maintains that core campaign speech is at issue. The party label "lifelong Republican," which he was fined for using and intends to use again in other campaign speech, carries significant political meaning. This "label" provides a succinct means of communicating a set of ideals and values, especially in

situations when time and space are limited, such as a candidate statement.[9]  Despite

the Defendants' assertion that Hetherington is free to communicate the same ideas

using other words, they do not expressly argue that the restriction is not content

based.   And because enforcement authorities must "examine the content of the

message" conveyed to determine compliance with Fla. Stat. § 106.143(3), the

restriction "is about as content-based as it gets."  *Otto*, 981 F.3d at 862–63 (quoting

*Barr v. Am. Ass'n of Pol. Consultants, Inc*., 140 S. Ct. 2335, 2346 (2020) (plurality

opinion) and *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984)).

Moreover, although the State's competing interest in regulating elections is

unquestioned, the Supreme Court has cautioned that "[a] State's broad power to

regulate the time, place, and manner of elections does not extinguish the State's

'responsibility to observe the limits established by the First Amendment rights of the

State's citizens.'"  *Eu,* 489 U.S. at 222 (quoting *Tashjian v. Republican Party of

Conn.*, 479 U.S. 208, 217 (1986)).   Contrary to the Defendants' arguments, the

restriction in Fla. Stat. § 106.143(3) plainly targets political speech, which "is at the

core of our electoral process and of the First Amendment freedoms," *id.* at  222–23;

---

[9] As noted by the Sixth Circuit, "[a] party platform after all is nothing more than an aggregation of political and legal positions, a shorthand way of announcing one's views on many topics of the day." *Carey v. Wolnitzek*, 614 F.3d 189, 202 (6th Cir. 2010) (finding unconstitutional a restriction against judicial candidates stating a party affiliation).

CASE NO. 3:21cv671-MCR-ZCB

it cannot be said to simply regulate the nonpartisan qualifications process, polling place conduct, or the ballot form.[10]  Therefore, the *Anderson-Burdick* framework is inapplicable, and strict scrutiny must be applied.  *See McIntyre*, 514 U.S. at 345–46 (stating a limitation on content that is political expression is not an "ordinary election restriction" and requires strict scrutiny).

Applying strict scrutiny, the Court considers whether the Defendants have shown that the restriction on political speech "advances a compelling state interest and is narrowly tailored to serve that interest."  *Eu,* 489 U.S. at 222 (internal citations omitted).  The Defendants assert two compelling state interests—that of maintaining the integrity of nonpartisan elections and maintaining a ballot free from confusion or undue influence in a nonpartisan election.  The Court agrees that these are compelling state interests.  *See Burson v. Freeman*, 504 U.S. 191, 199 & 211 (1992) (plurality opinion) ("a State has a compelling interest in protecting voters from

---

[10] The FEC Defendants also cite *Timmons v. Twin Cities Area New Party,* 520 U.S. 351 (1997), arguing that  a lesser burden will trigger a less exacting review and that a state's regulatory interests will usually justify a reasonable nondiscriminatory restriction. In that case, however, the law at issue precluded a candidate from appearing *on the ballot* as the candidate for more than one party, and the Court concluded that the state's regulatory interest justified the restriction because free speech did not guarantee a right to communicate that a party supports a particular candidate. *Id.* at 362–63 (noting that speech during the campaign was not limited—"the party retains great latitude in its ability to communicate ideas to voters and candidates through its participation in the campaign").  Here, by contrast, the candidate is told what not to say during the campaign, and regulations of the form of the ballot or the qualifications process are not at issue.  Therefore, *Timmons* also does not control.

confusion and undue influence," and applying strict scrutiny); *Eu,* 489 U.S. at 231 ("A State indisputably has a compelling interest in preserving the integrity of its election process.").[11]  But the Court does not agree that the statute is narrowly drawn to achieve those interests.

The State Attorney and FEC Defendants assert that the restriction is tailored to the state's interests in preserving the nonpartisan nature of the elections because the key concept of the statute is "to prevent those running for nonpartisan office from running as a party candidate," ECF No. 68 at 12–13, and the statute "does not prohibit Plaintiff from describing his history" or experience with a political party, ECF No. 69 at 14.  The argument that the statute is designed to prevent a candidate from running as a party candidate, however, implicitly acknowledges that the plain reach of the restriction, which bans any statement of party affiliation—not just statements that the candidate is a certain party's nominee—is overly broad.  A logical distinction can be made between a candidate stating his or her current party affiliation or membership as a "lifelong Republican" on the one hand, and on the other, a candidate statement representing that he or she is *the party's* nominee.

---

[11] Hetherington argues that the Court in *Eu* stated only that voter confusion is a "legitimate" state interest—not a compelling one.  The Court disagrees.  The Court in *Eu* was plainly applying strict scrutiny, and the Supreme Court in *Burson,* citing *Eu,* characterized this as a compelling interest.  *See Burson*, 504 U.S. at 199.

However, Florida has made no attempt to draw such a distinction in the statutory language and neither the Florida Supreme Court nor the Division's advisory opinions have narrowed the application of the statute in this manner.[12] Hetherington in fact was punished not for saying he was the party's candidate but for identifying himself and his history as a "lifelong Republican." Section § 106.143(3)'s banning of all nonpartisan candidate speech regarding current party affiliation in paid advertising and banning all "campaigning" based on party affiliation[13] to maintain a nonpartisan election is effectively "to burn the house to roast a pig." *Sable Commc'n of Cal., Inc. v. FCC*, 492 U.S. 115, 131 (1989) (internal marks omitted).

The State Attorney also argues that the statute prevents voter confusion and ensures that voters have a fair opportunity to examine a nonpartisan candidate on a basis other than party affiliation, which she contends ensures the integrity of

---

[12] Drawing such a distinction clearly could be a difficult task, but there is a valid distinction to be made. The Sixth Circuit has invalidated a similar party affiliation restriction in a nonpartisan judicial race despite the state supreme court's attempt to narrow its reach by construing the statute as prohibiting candidates "from portraying themselves *either directly or by implication* as the official nominee of a political party." *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016) (emphasis added). The court noted that although a state "has a right to prevent candidates from identifying themselves as the nominee of a political party for a [nonpartisan] seat," its interpretation was too vague to solve the problem because it remained "unclear when candidates go from permissibly affiliating with a party to illegally implying that they are the nominee of a party." *Id.* at 689.

[13] As discussed earlier, the term "campaigning" is not defined in the Code, and the Division has construed it broadly to include "all acts done to bring about a candidate's election." ECF No. 67–4 at 2.

Florida's nonpartisan election process. The FEC Defendants make the similar argument that the compelling interest is not to preserve a nonpartisan *office* but to preserve a nonpartisan *election procedure*. Again, prohibiting all statements of current party affiliation hits wide of the compelling interest mark. There is no evidence in the record or any reason offered for presuming that the voters will be confused by being offered information about a candidate's current party affiliation or that voters are better served if this information is *restricted* from them until after the election. *See Washington State Grange*, 552 U.S. at 454–55 ("There is simply no basis to presume that a well-informed electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate."); *Eu*, 489 U.S. at 228 ("[a] State's claim that it is enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism.") (quoting *Tashjian*, 479 U.S. at 221). The nonpartisan nature of the election is preserved by the absence of qualifications based on party (*i.e.*, party nominees) and the use of a nonpartisan ballot form. As the FEC maintains, candidates are not required to disavow their party membership in order to run because the actual *office* of school board member is representational and political in nature. Because a school board member's decisions can and should be responsive

to the electorate, contrary to a judicial officer's,[14] the free exchange of ideas during the election is core. *See Eu*, 489 U.S. at 223 (an "election campaign is a means of disseminating ideas").

The FEC Defendants criticize Hetherington as speaking "out of both sides of his mouth"—arguing on one side that § 106.143(3) restricts the offer of ideas by candidates and arguing on the other that the law already permits statements that effectively inform the electorate of the candidate's party affiliation. The Court does not see it this way. Herrington's argument only illustrates that the statute is both "seriously underinclusive [and] seriously overinclusive" when judged against its asserted justifications, which means the statute fails to survive strict scrutiny. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011); *Otto*, 981 F.3d at 879 (Martin, J., dissenting) ("A law fails to survive [strict scrutiny] if it is either underinclusive (that is, if it does not regulate enough conduct) or overinclusive (if it regulates too much conduct)."). The statue is overly inclusive, as discussed above, and Hetherington correctly notes that § 106.143(3) is underinclusive because it permits candidates for nonpartisan office to "dance around the issue of partisan

---

[14] *See Williams-Yulee*, 575 U.S. at 447 (noting the role of judges, who must decide cases based on fairness and independence, differs from the role of politicians, who may decide issues based on the preferences of their supporters); *see also supra* Note 8.

affiliation, so long as they do not utter a few magic words." ECF No. 67–1 at 23. For instance, a candidate's political advertisements and campaigning may include the candidate's "partisan-related experience," and § 106.143(3)'s prohibitions apply only to *candidates* for nonpartisan office and do not apply to School Board *officeholders. See* Fla. Div. of Elections, Advisory Opinion DE 2010-02 at 2 (Mar. 3, 2010). Thus, a candidate for nonpartisan office such as school board member may advertise that he is a "lifelong member of the executive committee of the Democratic Party" or a member of some other explicitly partisan organization but not that he is a "lifelong Democrat;" and a nonpartisan officeholder could advertise that he is a "lifelong Republican" up until the day before establishing his campaign for reelection to the same nonpartisan office without running afoul of §106.143(3). The Defendants maintain that these circumstances illustrate that the restriction is sufficiently tailored to preserve a nonpartisan campaign while still allowing a candidate to communicate his viewpoints in other ways. This argument is rejected because the Supreme Court has "consistently refused to overlook an unconstitutional restriction upon some First Amendment activity simply because it leaves other First Amendment activity unimpaired." *California Democratic Party v. Jones*, 530 U.S. 567, 581 (2000). The restriction is "woefully underinclusive" if the goal is to omit partisan campaigning *because* it permits campaigning based on "partisan-related

CASE NO. 3:21cv671-MCR-ZCB

experience" and thus party affiliation itself is neither prohibited nor is it totally excluded from the election process. *See generally White I*, 536 U.S. at 783 (finding that the Minnesota Supreme Court's prohibition on candidates for judicial election "announcing their views on disputed legal and political issues" was "woefully underinclusive" because it only applied "at certain times and in certain forms" that "cannot be explained by resort to the notion that the First Amendment provides less protection during an election campaign than at other times"); *Republican Party of Minn. v. White (White II)*, 416 F.3d 738, 757–58 (8th Cir. 2005) (finding on remand that precluding judicial candidates from identifying as "members of a political organization" was underinclusive it "restrict[ed] association with a political party only during a judicial campaign"). While restricting too little speech is not itself a First Amendment violation, this underscores a lack of tailoring to the compelling interests identified—the only point seems to be that statements of party affiliation are disfavored during the campaign but not at any other time.[15] Because § 106.143(3)

---

[15] The FEC Defendants argue that the statute is not underinclusive because the office itself is not nonpartisan in nature, so there is no reason to restrict that information after the candidate becomes a school board member. While this is true, this argument merely underscores the fact that there is no compelling reason to restrict the information from voters during a school board campaign in the first place.

is both underinclusive and overinclusive, it fails strict scrutiny's narrow tailoring requirement.

The FEC Defendants further argue that Hetherington cannot obtain redress without also challenging the Florida Constitution, Fla. Const. art. IX § 4(a) (which requires nonpartisan elections for schoolboard members), or other Code provisions that require nonpartisan elections, Fla. Stat. § 1001.361, and define a nonpartisan office as one "for which a candidate is prohibited from campaigning or qualifying for election . . . based on party affiliation," Fla. Stat. § 97.021(23).  *See Renne v. Geary*, 501 U.S. 312, 319–20 (1991) (noting, "the invalidation of one [statute] may not impugn the validity of another").  The Court disagrees.  Hetherington is not challenging the framework of nonpartisan elections but only the burden on his speech imposed by Fla. Stat. § 106.143(3), recognizing that even if he prevails, the nonpartisan nature of the election process, which is secured through the qualifications and ballot form regulations, will remain unaffected.  The definitional section of § 97.021(23) does not foreclose redress because it does not independently ban statements of party affiliation.[16]  Hetherington is entitled to summary judgment

---

[16] The unconstitutional portions of § 106.143(3) apply to any "candidate running for nonpartisan office," which includes judicial candidates.  The Court notes, however, that another statute, which has not been challenged and is not within the scope of this suit or Hetherington's

because   the statute is unconstitutional facially and as applied to his conduct of stating he is a "lifelong Republican."  Hetherington's motion to amend the complaint will be denied as moot.

## C.    Permanent Injunction

The undisputed evidence shows that Hetherington is entitled to a permanent injunction.  To be entitled to a permanent injunction, the plaintiff must demonstrate: (1) irreparable injury, (2) the lack of an adequate remedy at law, (3) that an injunction is warranted in light of the balance of hardships between the parties, and (4) that the injunction is consistent with the public interest.  *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  An injury is irreparable if it cannot be undone through monetary remedies, and it is well established that harms to First Amendment speech rights "for even minimal periods of time unquestionably constitute irreparable injury."  *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (internal marks omitted).   Hetherington's success on the merits establishes a threat of irreparable injury by continued enforcement of § 106.143(3), and the lack of any adequate remedy at law, satisfying the first two factors.  The last two factors merge when a government is the defendant.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

---

request to amend, does independently restrict similar conduct as to judicial candidates. *See* Fla. Stat. § 105.071.

Here, an injunction preventing unconstitutional conduct imposes no hardship on the Defendants and will not disserve the public interest but ensure the preservation of important speech rights, satisfying the remaining factors.

Accordingly:

1.      Hetherington's Motion for Summary Judgment, ECF No. 67, is **GRANTED,** and Defendant State Attorney Ginger Bowden Madden and the FEC Defendants' Motions for Summary Judgment, ECF Nos. 68, 69, are **DENIED**.

2.      The Clerk is directed to enter judgment in favor of Plaintiff, stating:

a.      The Court **DECLARES** that the following portion of Florida Statute § 106.143(3), is unconstitutional, both facially and as applied, in violation of the First Amendment:

> A political advertisement of a candidate running for nonpartisan office may not state the candidate's political party affiliation. This section does not prohibit a political advertisement from stating the candidate's partisan-related experience. A candidate for nonpartisan office is prohibited from campaigning based on party affiliation.

b.      Therefore, the Court **GRANTS** Plaintiff's request for a permanent injunction. The Court hereby **PERMANENTLY ENJOINS** the enforcement of the above-quoted clauses of § 106.143(3), with regard to nonpartisan candidates, as follows:  Defendant Ginger Bowden Madden in her official capacity as State Attorney for the First Judicial Circuit in and for Escambia County;

CASE NO. 3:21cv671-MCR-ZCB

Defendant Joni Alexis Poitier, in her official capacity as Vice Chair of the Florida Elections Commission; and Defendants Barbra Stern, Kymberlee Curry Smith, Jason Todd Allen, and J. Martin Hayes, in their official capacities as members of the Florida Elections Commission, and their officers, agents, servants, employees, and successors, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise are hereby permanently enjoined from enforcing the above-quoted portion of Florida Statute § 106.143(3).

3.     Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 74, is **DENIED** as **MOOT**.

4.     The FEC Defendants' Motion to Strike Portions of Plaintiff's Motion for Summary Judgment, ECF No. 76, is granted in part and denied in part as follows: **GRANTED** as to the objection to citations to Ballotpedia and the Florida School Board Association, and **DENIED** as to counsel's declaration.

5.      The Clerk is directed to tax costs against the Defendants, and close the

file.

**DONE AND ORDERED** this 8th day of November 2022.


*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 3:21cv671-MCR-ZCB